JEDEDIAH STARK *v*. ALSON L. WILDER.

[IN CHANCERY.]

*Mortgage.   Contracts.   Statute   of   Frauds.*

It is well settled that the mere payment of the contract price by the purchaser of real estate, is not sufficient to take the contract out of the statute of frauds; but it is equally well settled that when the purchaser pays the whole or part of the purchase money, and enters into the possession of the premises, or does acts relying upon the agreement, that places him in such a position that the refusal by the seller to execute the contract on his part, will operate to his prejudice and injury, beyond the payment of the money, so that the re-payment of the money, or the recovery of it, will not be an adequate remedy, then such act will take the case out of the statute, and warrant a court of equity in decreeing a specific performance of the contract.

The orator and the defendant were mortgagees of the land in question, and both foreclosed as against the mortgagor.  The orator then purchased the defendant's interest and paid him the full contract price, upon the promise of the defendant to have a deed executed the next day and left with the town clerk for record; and the defendant thereupon surrendered the possession.  The orator did not enter into *actual* possession, but sold the land within a few days, and executed a warranty deed thereof, relying upon the contract and believing that the defendant had executed it on his part, and that his title was perfect and of record.  *Held,* that the orator is entitled to a decree that the defendant release to the orator all his claim to the premises under his mortgage.

BILL IN CHANCERY.* The substance of the allegations and the proof is sufficiently set forth in the opinion. The bill was dismissed, and the orator appealed.

*H. E. Stoughton*, for the orator.

*Flay & Tyler* and *W. H. Follett*, for the defendant.

PIERPOINT, J. This bill is brought principally to compel the defendant to release to the orator all claim and interest, which the defendant has in and to certain described premises, by virtue of a mortgage executed to the defendant by one Lincoln Raymond ; the orator having a subsequent mortgage of the same premises from said Raymond.

It appears from the admitted allegations and the proof, that

---

* The decree of the Chancellor was not sent to the Reporter with the papers in this case.

both the orator and defendant had caused the equity of redemption in Raymond, under each of their respective mortgages, to be foreclosed. The orator not having been made a party to the defendant's bill against Raymond, was not affected by the decree obtained therein, but still had the right to redeem the defendant's mortgage. The defendant's mortgage covered other lands besides the tract embraced in the orator's mortgage. While the respective rights of the parties stood in this position, they met for the purpose of adjusting the matter between them, and while together it was ascertained that the defendant had not caused his decree to be recorded in the town clerk's office, and upon an examination of a statute then recently passed, both parties came to the conclusion, (honestly we think, although mistakenly) that the defendant had lost all benefit of his decree by reason of his neglect in that respect. Acting upon this supposition it was finally agreed between them that the defendant would give the orator his note for the amount due him under his decree, and take an assignment of his mortgage and decree, and the interest acquired by virtue thereof. The note was given, the assignment executed, and the parties separated. Soon thereafter, and on the same day, the defendant saw C. N. Davenport, Esq., and learned from him that the statute did not apply to his decree, thereupon the defendant employed the said Davenport to go with him to the orator and see what could be done about the matter, and they did go that same evening. On their arrival the subject of their misapprehension as to the effect of said statute was talked over and explained to the understanding and satisfaction of both parties. After further conversation upon the subject of an adjustment of the matter, the defendant made a computation and ascertained that the amount due him upon his mortgage and decree was about three hundred dollars. It was then agreed between the parties that the orator should give up the first agreement, and pay the defendant two hundred and fifty dollars, and the defendant should release by a quit claim deed to the orator all his right to, and interest in the premises embraced in his mortgage that was also covered by the orator's mortgage, thereby in effect discharging his, the defendant's, mortgage upon those premises. Thereupon the orator re-assigned to the defendant

Stark *v.* Wilder.

the mortgage and decree, which had been assigned to him under the first agreement, and brought forward the note which the defendant had given him, and the two hundred and fifty dollars, and laid them upon the table for the defendant. The defendant took the note and destroyed it, and Davenport took up the money, counted it, and said it was right. The orator then asked the defendant to execute the quit claim deed, but Davenport said that it had got to be so late in the night, and he had to be at a distance in the morning to transact some business, he could not stop then to make the deed. The defendant then said he would execute the deed in the morning, and Davenport said the deed should be executed in the morning, and he would take or send it to the town clerk's office and have it recorded. The defendant then told the orator to take possession of the premises immediately. The orator remarked that he wanted to sell the land, as he did not wish to keep it. The defendant told him he would assist him in making a sale of it, and named a person who he thought would buy it. The parties then separated, Davenport taking the $250. away with him. Within a day or two thereafter the orator found a purchaser for the land, and relying upon the assurance of the defendant and his attorney, Davenport, that the deed should be executed and left with the town clerk for record, and supposing that it had been done, and that his title to the premises was perfect, and of record, he sold the land, took the pay for it, and executed a warranty deed thereof to the purchaser. A few days after this, he ascertained that the defendant had not executed the deed as agreed, but refused to do so. And it is to compel the defendant to release his interest in the premises to the orator, and to restrain him from setting up any title thereto under his said mortgage, that this proceeding is instituted.

It it insisted on the part of the defendant that the orator is not entitled to the relief sought, for the reason that the agreement was not reduced to writing, and is therefore inoperative under the statute of frauds; and that there has been no such performance of the contract on the part of the orator, and no such acts done by him under it, as can operate to take the case out of the statute.

Whether the transaction should be regarded as a contract for the purchase of the defendant's interest in the premises requiring a deed of conveyance to transfer such interest, or as a mere act of redemption by the orator as the second mortgagee (he having the right to redeem), by the payment of an agreed sum, so that the payment would operate to discharge the premises from the defendant's mortgage without the execution of any release or instrument of conveyance, is a question we do not find it necessary now to consider, as we think the acts of the orator done under the agreement, and in reliance upon it, are such as to take the case out of the statute of frauds.

The principle seems to be now well settled that the mere payment of the contract price by the purchaser, is not sufficient to take the contract out of the statute ; but it is equally well settled that where the purchaser pays the whole or part of the purchase money, and enters into the possession of the premises, or does acts relying upon the agreement, that places him in such a position that the refusal by the seller to execute the contract on his part, will operate to his prejudice and injury, beyond the payment of the money, so that the re-payment of the money, or the recovery of it, will not be an adequate remedy, then such acts will take the case out of the statute, and warrant a court of equity in decreeing a specific performance of the contract. A refusal under such circumstances to execute the contract, it is sometimes said in the books, operates as a fraud upon the purchaser. It certainly so operates to his injury as to entitle him to relief in a court of equity.

In this case the orator paid to the defendant, or his attorney, the full contract price, the defendant surrendered to him the possession, and although he did not go into the *actual* possession of the land, yet he proceeded to sell it, and executed a warranty deed of it, thereby obligating himself to defend the title to the purchaser. All this the orator did, relying upon the contract and believing the defendant had executed it on his part, and that his title was perfect and of record. This we think is sufficient to entitle him to relief.

The decree of the chancellor dismissing the bill is reversed,

and the case remanded, with directions that a decree be entered for the orator requiring the defendant to release to the orator his claim to the premises under his mortgage, and that the temporary injunction be made perpetual, with costs to the orator.