Clark *v.* Glidden.

SARAH K. CLARK *v.* J. Q. A. GLIDDEN AND OTHERS.

[In Chancery.]

*License. Aqueduct. Estoppel. Fraud.*

1. Parol License. A parol license to lay an aqueduct to a spring of water on one's land is irrevocable during the existence of the aqueduct; and a court of equity, on the ground of equitable estoppel, will protect the licensee in the use of the aqueduct; and will grant and continue an injunction restraining the owner of the spring from interfering with the aqueduct until its decay; for a revocation of the license would operate as a fraud.

2. And the licensee has the right to make such repairs on the aqueduct as may be necessary to keep it usable, but not such as in any just sense would amount to a renewal of the aqueduct.

3. Mistake. Where there was a misunderstanding between the parties and the oratrix supposed that she was to have the water for nothing, but the defendant understood that she was to pay him at least nominal rent, so that she would not acquire title by possession, and the master found that the right to take the water was worth $3 per year, the injunction was continued on condition of payment of that sum.

4. It seems that, at law, the licensor may revoke his license at any time.

5. Distinction between a license and an easement stated.

Bill in Chancery. Heard on the pleadings and a special master's report, September Term, 1886, Powers, Chancellor. Decree for the oratrix; and that the injunction be continued in force during the existence of the aqueduct.

The case appears in the opinion of the court.

*S. C. Shurtleff,* for the defendants.

The oratrix claims that although she has not made out her case as claimed, still she has shown enough to amount to a parol license to lay the aqueduct and take the water; and that having laid the aqueduct at large expense, the license is irrevocable, and that she is entitled to an injunction prohibiting the defendants from interfering with the flow of water therein while the aqueduct lasts.

In view of this claim, it becomes necessary to inquire whether this interest is an interest in lands, and whether it is based upon a valuable consideration. There is no claim that she paid any consideration for this right, and there is no doubt that it is an interest in lands. *Hall* v. *Chaffee*, 13 Vt. 150. The case of *Allen* v. *Fisk*, 42 Vt. 462, does not aid in the solution of the question. The decisions on this question are not uniform, Pennsylvania, Ohio, Indiana and Iowa holding parol licenses irrevocable, while most of the other states hold to the contrary. All of the decisions agree that the license is a justification for the acts done under the license.

The later decisions hold as follows: "The more recent decisions and the weight of authority are to the effect that, both at law and in equity, the doctrine that an executed license is irrevocable is confined to those licenses, under which, when executed, it cannot be claimed that any estate or interest in land passes, and to licenses which are given upon a valuable consideration." Gould, Waters, s. 323, p. 529; *Houston* v. *Laffee*, 46 N. H. 505; *Dodge* v. *McClintock*, 47 N. H. 386; *Hill* v. *Cutting*, 113 Mass. 103; *East Jersey Iron Co.* v. *Wright*, 32 N. J. Eq. 248; 2 American Leading Cases, 682–706; Godd. Eas. 901; *Morse* v. *Copeland*, 2 Gray, 302; *Josefa De Haro* v. *United States*, 5 Wall. 599.

In those states in which it is held that parol licenses are irrevocable, the decisions all rest upon the ground that the defendant is estopped by his conduct from revoking, and that it is a *fraud* upon the other party. If this doctrine is applied to the present case, no such facts are found as warrant an estoppel, much less that the defendant has acted in bad faith; he refused to convey the right by deed, never has been paid anything, and has expended time and labor in the belief that he was to be paid.

*J. P. Lamson*, for the oratrix.

The oratrix entered upon the land of the defendant and put down her aqueduct, by reason of a license given to her by the

defendant. Therefore, the defendant had no right to disturb her in the use of the aqueduct until she had received the full benefit of the expenditure in putting it down.

The oratrix has expended $400 on the aqueduct, with full knowledge of the defendant. He is estopped from interfering with the water until she had had the full benefit of the expenditure. *Allen* v. *Fisk*, 42 Vt. 462; *Prince* v. *Case*, 10 Conn. 375; *Benedict* v. *Benedict*, 5 Day, 469; *Sampson* v. *Burnside*, 13 N. H. 264; 7 N. H. 237; 24 N. H. 364; 21 N. H. 291; 11 N. H. 102; 8 East, 429; 7 Bingham, 682.

The opinion of the court was delivered by

TYLER, J. The material facts reported by the master are, that the oratrix and defendant owned adjoining farms in Cabot; that the oratrix was about to lay an aqueduct from a small and insufficient spring on her farm to her farm buildings, when she had a conversation with the defendant, in which he told her there was a good chance for her to take water from a large spring on his farm, about the same distance from the oratrix's buildings as her own spring. The defendant was making no use of the water and told the oratrix that it was not benefiting him and she might take it if she wanted it. The master finds that the parties understood they had made an agreement by which the oratrix was to take water from the defendant's spring, but that they misunderstood each other as to the terms of the agreement, the oratrix supposing she was to have the water for nothing, while the defendant understood that she was to pay him at least nominal rent, so that she would not acquire title by possession. No sum or price was named as rent. The oratrix had a ditch dug for her aqueduct, but before having the logs laid she saw the defendant again, and told him she would like some kind of a writing from him, but he, understanding that she desired a deed, declined to give it, saying that she required no writing, and that she could take the water just as well without as with one. The oratrix then had the aqueduct laid, one hundred rods of which ran through

Clark *v.* Glidden.

lands of the defendant. After the logs were laid the pressure of the water upon them was found so great that for a portion of the distance they had to be taken up and iron pipes laid in their stead. All this was done with the defendant's knowledge and consent. The entire expense of the aqueduct was four hundred dollars. The defendant constructed a fence around the spring for its protection and permitted the oratrix, without objection, to use the water for the space of three years, when he notified her that she must pay something for the use of the spring to prevent her getting title by possession. She replied she had already got it and refused to pay anything, whereupon the defendant cut off the water, which was the cause of this suit. It is further found that before the suit was brought the defendant conveyed his farm to the other two defendants, who are his sons, and who took the title thereto with full knowledge of the oratrix's claim to a right in the spring. It is also found that the right to take the water and to have the spring properly fenced by the defendant, together with a right to enter upon defendant's land to repair the aqueduct is worth fifty dollars, or an annual rental of three dollars; also, that the taking of the water by the oratrix was of no benefit or advantage to the defendant.

The oratrix put in her aqueduct and incurred large expense about the same, not as a trespasser, but by the defendant's license. It is insisted by her that the license, having been executed on her part, was either irrevocable or could only be revoked after she had received the full benefit of her expenditure. The defendant, on the other hand, claims that the right to the water of the spring was an interest in the realty, and that the doctrine that executed licenses are irrevocable is confined to those cases in which no interest in land passes, and to licenses that are given on a valuable consideration.

A license is defined to be an authority given to do some act or a series of acts on the land of another without passing any interest in the land. *Cook* v. *Stearns*, 11 Mass. 537; 1 Wash. Real Prop. 398. An easement is a right in the

45

owner of one parcel of land, by reason of such ownership, to use the land of another for a specific purpose, not inconsistent with a general property in the. owner; a right which one proprietor has to some profit, benefit or beneficial use, out of, in or over the estate of another proprietor. *Pomeroy* v. *Mills*, 3 Vt. 279; 2 Wash. Real Prop. 25.

The grant of an easement does not pass the realty to the grantee. It conveys an interest in the realty, it is true, but that interest consists of a right of use, like a way over land or a right of aqueduct or drainage through it, while the general property remains in the grantor. It is well settled that an easement must pass by deed or by prescription, while a mere license to do a particular act or a series of acts on the lands of the licensor may be by parol; and yet Washburne, page 398, says that a license may be, and often is, coupled with a grant of some interest in the land itself.

It is apparent that the distinction between an easement and a parol license cannot always be maintained either in respect to the extent of the privilege or its duration. In Kent's Com. vol. 3, page 592, it is said that the distinction is quite subtle, and that it becomes difficult in some of the cases to discern a substantial difference between them.

The defendant's spring of water was a part of his realty, and the right claimed by the oratrix is a right in the realty, together with an easement from the spring through the defendant's land to her own land. The question therefore is whether this license, resting wholly in parol, had any validity; whether it was revocable at any time at the defendant's option, even after the licensed act had been fully executed by the oratrix.

It is clear that an interest in land cannot be conveyed by parol, nor can an easement be created except by deed; Angell on W. C. ss. 168–173; that licenses which in their nature amount to the granting of an estate for ever so short a time are not good without deed; *Cook* v. *Stearns, supra*; *Hewlins* v. *Shippam*, 5 Barn. & Cress. 221; 7 Dowl. & Ryl. 783; and that a parol license, which, if given by deed, would

create an easement, is revocable, although executed by the licensee. As was said by PARKER, Ch. J., in *Cook* v. *Stearns*, "A permanent right to hold another's land for a particular purpose, and to enter upon it at all times without his consent, is an important interest, which ought not to pass without writing, and is the very object provided for by the statute."

The defendant's counsel relies upon the above authorities, and upon the statement of the law in Gould on Waters, s. 323, that, "The more recent decisions and the weight of authority are to the effect that, both at law and in equity, the doctrine that an executed license is irrevocable is confined to those licenses under which, when executed, it cannot be claimed that any estate or interest in lands passes, and to licenses which are given upon a valuable consideration." In *Houston* v. *Laffee*, 46 N. H. 505, the court said that, "while it had been held that where a license became executed by an expenditure incurred, it is either irrevocable or cannot be revoked without remuneration, on the ground that a revocation would be fraudulent and unconscionable, yet the more recent decisions sustain the doctrine that the license is in all cases revocable so far as it remains unexecuted, or so far as any future enjoyment of the easement is concerned." REDFIELD, J., in his note to his opinion in *Hall* v. *Chaffees*, 13 Vt. 150, recognizes this to be the law.

The courts, both in this country and in England, have held variously upon this subject. As was said by the Vice-Chancellor in *The East Jersey Iron Co.* v. *Wright*, 32 N. J. Eq. 248, "The adjudications upon this subject are numerous and discordant. Taken in their aggregate they cannot be reconciled, and if an attempt should be made to arrange them into harmonious groups, I think some of them would be found to be so eccentric in their application of legal principles, as well as in their logical deductions, as to be impossible of classification."

In the case last cited it was held that a contract giving a

Clark *v.* Glidden.

party an exclusive right to dig ore in certain lands, no estate or interest in the lands being granted, is a license and not a grant or demise.

The Vice-Chancellor quotes from numerous cases wherein it is held that a license is a mere personal privilege; that even where money has been paid for it, it is revocable at law, at the pleasure of the licensor; that the death of either of the parties will terminate it; that even when under seal the licensor may revoke it at will; and when it affects lands a conveyance of them will revoke it. But he adds, " These rules do not, however, apply when an interest is coupled with the license, or an interest is created by an execution of the license." And he lays down the rule that, except in cases where it appears that the authority or privilege given has been so far executed that its withdrawal will amount to a fraud, a license, whether created by parol or by writing under seal, is always revocable.

The oratrix would be remediless by the strict rules of law. Is she entitled to equitable relief upon the facts reported?

In Angell on W. C. s. 318, it is said that in equity licenses executed are taken out of the Statute of Frauds, and that relief may be had in equitable tribunals by the licensee. This is not upon the ground that the right passes by parol license or agreement, but that where one party has executed it by payment of money, taking possession and making valuable improvements, the conscience of the other is bound to carry it into execution. The author cites the case in 2 Eq. Cas. Abr. 523, Pl. 3, where one party stood by and saw his watercourse diverted, and instead of preventing it encouraged the work, and afterwards brought his action at law. The defendant, on application to the Court of Chancery, obtained an injunction. A leading case is *Rerick* v. *Kern*, 14 Ser. & Rawle, 267, where it is held that an executed license, the execution of which has involved the expenditure of money or labor, is regarded in equity as an executed agreement for valuable consideration, and as such will be enforced, even when merely verbal and relating to the use or occupation of real estate.

It is urged in this case that the defendant was not guilty of bad faith in interrupting the aqueduct. But it is not necessary that active fraud should be found. Relief must be granted, if at all, upon the ground that the oratrix laid her aqueduct by defendant's permission and at great expense, and that the revocation of the license operates as a fraud upon her. In the case of *Houston* v. *Laffee*, above cited, the court referred to several authorities to show that when the parties cannot be placed *in statu quo*, the court of equity will grant relief, as in any other case of part performance of a parol contract for the sale of land, upon the ground of preventing fraud. Judge REDFIELD, in the note before referred to, assigns the same ground for granting equitable relief, and in his opinion he says: "Doubtless, a parol license to flow water back upon land, when once executed, becomes irrevocable, to some extent, in equity, and this although it may be an interest in land."

In *Adams* v. *Patrick*, 30 Vt. 516, the defendant permitted the orators to dig a ditch from their mill through his land to take away the waste water from their wheel-pit, in consideration that they would build a substantial wall for him along the bank of the stream. In reliance upon this permission, the orators lowered their water-wheel, dug a ditch and incurred other expenses, and built a wall for the defendant, though not so substantial an one as was agreed. Some year and a half afterwards the defendant obstructed the ditch. Upon a bill being brought praying for a specific performance of the agreement, the court held that there had been a sufficient part performance to take the case out of the Statute of Frauds. In that case there was a consideration for the license, but the decision went on the ground that a revocation operated as a fraud on the orators. See *Stark* v. *Wilder*, 36 Vt. 752.

"Where one of the two contracting parties has been induced or allowed to alter his position on the faith of such contract to such an extent that it would be fraud on the part of the other party to set up its invalidity, courts of equity hold that the

clear proof of the contract and of the acts of part performance will take the case out of the operation of the statute, if the acts of part performance were clearly such as to show that they are properly referable to the parol agreement." *Williams* v. *Morris*, 95 U. S. 444.

In this case there was a clear agreement between the parties that the oratrix should lay an aqueduct. They misunderstood each other only in regard to the consideration. We think the defendant is equitably estopped from interfering with the aqueduct during its existence. That should be the duration of the estoppel bar; and no use short of that would give the oratrix the full benefit of her expenditure.

In the earlier New Hampshire cases it was held that a license to build a dam or a bridge on another's land was irrevocable while the structures continued, but might be terminated by their decay. *Woodbury* v. *Parshley*, 7 N. H. 237; *Ameriscoggin Bridge* v. *Bragg*, 11 N. H. 102.

The case of *Allen et al.* v. *Fisk*, 42 Vt. 462, is similar in its facts to the present one. While the court held in that case that the defendant had the right of revocation, and that the contract between the parties was not sufficiently clear to warrant a decree for specific performance, yet, as the orators laid the aqueduct with defendant's permission, their right to receive the full benefit of their expenditure by the use of the first aqueduct while it lasted, before such revocation would take effect, was fully recognized. It was held that the orators had not a right, after notice of revocation, to lay another aqueduct, the first having decayed.

It seems that, at law, the licensor may revoke his license at any time, even after the licensed act has been executed; that a sale of the realty upon which the right rests is deemed to be an act of revocation; *Stephens* v. *Stephens*, 11 Met. 251; and that such license could not be enforced against the *bona fide* purchaser of the realty without notice. But when the licensor has stood by and allowed the licensee to perform acts and spend money in reliance on his license, a court of equity

will interfere and protect the licensee in the use of the aqueduct until its decay, on the ground of equitable estoppel.

The decree of the chancellor is affirmed, and cause remanded under a mandate that the injunction remain in force so long as the present aqueduct lasts, with the right in the oratrix and her heirs and assigns, during that time, of repairing the same as may be necessary to keep it usable, but not with the right of making any repairs that shall in any just sense amount to a renewal of the aqueduct itself, on condition that the oratrix pay the defendant an annual rental of three dollars while the aqueduct continues, including three dollars for each year since it was laid.