STEVENS *v.* CITY OF MUSKEGON.[1]

1. Statute of Frauds—Municipal Grant—Evidence.

Plaintiff presented a written petition to the mayor and common council of defendant city, asking permission to construct a private sewer in some of the public streets, describing specifically the *termini* of the proposed sewer, the streets in which it was to be placed, and its exact location therein. The council referred the petition to a committee, with power to act. Thereafter a bond was furnished by the plaintiff, conditioned for the proper performance of the work of constructing the sewer, and such bond was accepted and approved by the proper officers. *Held*, that there was sufficient written evidence of a contract, granting to the plaintiff the use of the streets, to satisfy the statute of frauds. Hooker, J., dissenting.

2. Municipal Corporations—Private Sewer—Police Power—Vested Rights.

Although a city which grants to an individual by a contract in writing the privilege of constructing a private sewer in its streets, with the right to the builder to charge abutting owners for connecting therewith, may superintend the construction of the sewer, see that connections are properly made, and regulate its use so that other citizens shall not be injured, the builder obtains by such grant a vested right, which cannot be unreasonably interfered with.

[1] Rehearing denied January 12, 1897.

3. SAME—GOVERNMENTAL FUNCTIONS—REMEDIES.

A city council, in passing and enforcing an ordinance which interferes with the rights of the proprietor in a private sewer constructed by authority of the council in the public streets, is in the exercise of its governmental functions, and hence the city is not liable to such person in an action at law for the damages sustained by reason of such action, the proper remedy being a proceeding to restrain an unlawful interference with vested rights.

Error to Muskegon; Russell, J. Submitted December 4, 1895. Decided December 9, 1896.

Case by Washington C. Stevens against the city of Muskegon for a wrongful interference with his rights under a municipal grant. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

When the plaintiff had rested his case, the court, upon motion, directed a verdict for the defendant. Several reasons for the motion were assigned, but upon which one the court directed the verdict does not appear. We can therefore only determine the rights of the parties from the case as made by the plaintiff. On August 13, 1884, the plaintiff presented a written petition to the mayor and common council of the defendant city, asking that he be granted a permit, the right of way, and privilege to lay a 12-inch sewer in some of the streets and alleys of the city. The petition specifically described the *termini* of the sewer, the streets in which it was to be placed, and the exact locality in the streets. By the action of the council the petition was referred to the sewer committee, with power to act. A bond was given September 11, 1884, to the city, executed by the plaintiff with two sureties, conditioned that he "should replace the streets in as good condition as they then were after constructing and building this sewer, and should keep the city free from all damages, costs, and expenses by reason of damages that might re-

sult to any individual or person by reason of the tearing up of any alleys or streets during its construction." This bond was approved by the chairman of the sewer committee, and filed in the proper city office. The sewer was constructed under the supervision of the sewer committee. On May 29, 1885, plaintiff presented another written petition to the council praying for permission to extend his sewer, describing streets and localities as specifically as before. This was likewise referred to the same committee, with power to act, a bond of like character was filed, and the sewer constructed. May 27, 1885, the committee on sewers made a report recommending the adoption of the Waring system of sewerage. Subsequently other petitions were presented to the common council by resident lot holders asking permission to lay sewers from their property to connect with the Stevens sewer. These petitions included one from the school board of the city and another from the board of supervisors of the county. These were granted, and were evidently regarded as a part of the plaintiff's sewer. It was evidently understood that he was to construct them. He gave bonds of like character with the one above described, and constructed the sewers at his own expense. In this work he expended about $20,000. It appears that there was great need of a sewer to protect the health of the city. One hundred cesspools, which had been nearly or quite full, were drained into it. Its outlet was in Lake Muskegon. The lot owners paid plaintiff for the use of the sewer. One Delano had made connection with this sewer under an agreement with plaintiff, and for some reason the common council ordered it taken up. He thereupon, February 3, 1890, presented a petition to the council, setting forth in full his written contract with plaintiff, and praying that he be granted the immediate right to connect with plaintiff's sewer. This was referred to a committee, which made a report recommending that the petition be granted upon condition that the work should be done under the city's supervision,

which report was adopted. After plaintiff's sewer was constructed, it was assessed to him as his property, the tax on which one year was $185.20. Plaintiff had complied with all the requirements of the city in constructing this sewer, and no complaint appears to be made that the work was not properly done. In fact, it was done under the direction of the mayor or of the committee. May 23, 1890, the common council adopted an ordinance prohibiting any person from laying, causing to be laid, or assisting in laying any sewer in any public street or alley of the city, or to connect any premises with any private sewer laid in any street or alley, without first obtaining permission from the common council, and provided a penalty by fine and imprisonment for so doing. After the passage of this ordinance, plaintiff was proceeding to make connections with sewers from adjoining lots, when he was prevented by the city, through its police force, and was arrested. This suit was planted upon the theory of damage to the plaintiff's property by the action of the council, and the consequent right of recovery.

*P. W. Niskern* (*Stephen H. Clink* and *Kingsley & Kleinhans*, of counsel), for appellant.

*H. J. Hoyt* (*William E. Hoyt*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). 1. If the plaintiff has not become vested with any property rights which courts should protect, it must be in consequence of some inflexible rule of law. The statute of frauds is invoked as imposing such a rule. If the plaintiff's right rested in parol, it might be held that it was such an interest in land that it could not be acquired by estoppel under the decisions of this court. *Huyck* v. *Bailey*, 100 Mich. 223; *Wood* v. *Railroad Co.*, 90 Mich. 334, and authorities there cited. Courts are not in harmony upon this subject; many authorities holding that municipalities are estopped to deny rights so acquired. We are, how-

ever, of the opinion that plaintiff's right does not rest in parol. The petition to the council specifically described and defined the use of, and the exact location of the sewer in, the streets and alleys desired, which use the common council had the undoubted authority to grant. The council referred it to the committee on sewerage, with power to act. This appears upon the record of the proceedings of the council. The committee did act, but there does not appear any recorded evidence of their report to the council. That they authorized the construction of the sewer is not disputed. Before plaintiff was permitted to proceed to its construction, he was required to give a bond. The council received this bond, approved by the proper officers, and it became part of the public records of the city. Every subsequent petition was just as specific, was treated in the same manner, and a similar bond executed, approved, and filed. The city needed sewerage. It was willing to relieve itself of taxation by giving to the plaintiff the right to construct a system of sewerage at his own expense, but under the city's supervision, giving the right to the plaintiff to contract with lot owners to construct sewers from their own premises into it. Plaintiff's written proposition to the city was clear and explicit. The council virtually accepted it by conferring upon its appropriate committee the power to carry it into effect, and spreading that resolution upon its records. It is, however, unnecessary to hold that this was a sufficient acceptance of the proposition. to satisfy the statute of frauds. The bond filed referred to the petition, and its acceptance and approval made the contract complete. In referring this petition to its committee, the common council was not acting in its governmental capacity, but in a *quasi* private capacity, as hereinafter determined. It is not necessary to grant this use of the streets by an ordinance. It was not a legislative act. The petition, the resolution, and the bond constituted a contract in writing by which the use of the streets was granted to the plaintiff. If A. makes a written

proposition to B. to construct a tile drain from A.'s land across B.'s, stating its exact location, which is for the mutual benefit of both, and B. writes A. that he has authorized C. to act in the matter for him, and C. acts, takes a bond from A. to B. to construct it as proposed, delivers it to B., and A. then constructs the drain, is there not written evidence to satisfy the statute? In this proceeding the city stands in no better position than B. would in the proposed case. The same rules of law and equity apply in the one case as in the other. It is impossible to read the record in this case without reaching the conclusion that reports were made by the sewer committee to the council authorizing and approving this sewer. If this record contains all that is found in regard to this matter in the record of the common council proceedings, there is negligence on the part of some one in not properly keeping the records, or on the part of the council in not putting its proceedings in proper shape for recording. In such cases courts will not hunt for technicalities to defeat rights so clearly grounded in equity and good conscience, but will give a liberal interpretation to writings found, in order to satisfy the statute of frauds.

2. The use of the streets granted to the plaintiff was not a license, revocable at the will of the defendant. It is of little moment what name we give the right conveyed, whether an easement or an irrevocable license. It was known to the parties that plaintiff must incur great expense, and it would be absurd to hold that he and the city entered into this arrangement for their mutual benefit with the understanding that the city might at any time revoke it, and impose the entire loss upon the plaintiff. The city has undoubtedly the right to superintend its construction, and to see that connections with other private sewers from lot owners are properly made, and to regulate its use so as not to be injurious to its citizens. With these restrictions, the plaintiff obtained a

vested right to the use of his property.   To hold otherwise would be a reproach upon the law.

3. Has the plaintiff pursued his proper remedy?   He claims that the action of the council has virtually destroyed the value of his property.   It is essential to determine just what the council has done.   It has not attempted to destroy the sewer, or to interfere with the right of those who are now connected with it to use it. By its ordinance, and the arrest of the plaintiff for its violation, it only attempted to interfere with his right to make other contracts in the future, and to connect other private sewers with his own.   In passing the ordinance and enforcing it, the council was in the exercise of a governmental power, for which it is not liable in damages resulting from the enforcement of the ordinance by the city officials.   The authorities recognize that municipalities act in two capacities, the one governmental and the other *quasi* private.   When acting in the latter capacity, they are subject to the same rules that govern private corporations or individuals in their transactions with others.   In the latter case the doctrine of strict construction is not applied, and courts do not look for express authority for the exercise of the power.   The power is inherent in them to make contracts for lighting streets and public buildings, to secure water for fire and other purposes, and to construct sewers in order to protect the health of the inhabitants.   It may be, and often is, difficult to determine in which capacity a municipality is acting in a given case, but the distinction is well settled. Chief Justice Nelson, in *Bailey* v. *Mayor, etc., of New York*, 3 Hill, 539 (38 Am. Dec. 669), thus states it:

"The distinction is quite clear and well settled, and the process of separation practicable.   To this end regard should be had, not so much to the nature and character of the various powers conferred as to the object and purpose of the legislature in conferring them.   If granted for public purposes exclusively, they belong to the corporate

body in its public, political, or municipal character.    But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation *quoad hoc* is to be regarded as a private company.    It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred."

See, also, 1 Dill. Mun. Corp. § 445; Tied. Mun. Corp. § 324; *Hill* v. *City of Boston*, 122 Mass. 344, 359 (23 Am. Rep. 332); *Beers* v. *Dalles City*, 16 Or. 334; *Barron* v. *City of Detroit*, 94 Mich. 601 (34 Am. St. Rep. 366); *Burford* v. *City of Grand Rapids*, 53 Mich. 98 (51 Am. Rep. 105); *Western Saving Fund Society* v. *City of Philadelphia*, 31 Pa. St. 189 (72 Am. Dec. 730). The passage of the ordinance and its enforcement did not, therefore, give the plaintiff a remedy by an action at law to recover damages. *Culver* v. *City of Streator*, 130 Ill. 238; *Trammell* v. *Town of Russellville*, 34 Ark. 105 (36 Am. Rep. 1).    We think the only appropriate remedy is by some proceeding to restrain the action of the council from interfering with the plaintiff's legal rights. An examination of the authorities will show that this is the usual remedy.    *Mayor, etc., of Baltimore* v. *Radecke*, 49 Md. 217; *Dayton* v. *Quigley*, 29 N. J. Eq. 77; *Spokane St. R. Co.* v. *City of Spokane Falls*, 6 Wash. 521; 1 Dill. Mun. Corp. § 420; Tied. Mun. Corp. § 396.

It should be understood that this opinion is based entirely upon the case made by the plaintiff.    If the defendant has any legal ground to defeat the right of the plaintiff to connect other sewers with his own, it does not appear upon this record.

The judgment is affirmed, for the reason that plaintiff cannot maintain an action at law.

LONG and MONTGOMERY, JJ., concurred with GRANT, J.    McGRATH, C. J., did not sit.

HOOKER, J. (*dissenting*). The plaintiff, at his own expense, constructed sewers in the city of Muskegon, the same being partly upon private ground, which he owned, or over which he obtained the right of way, and partly in streets, where they were laid by consent of the common council, upon petition presented to it by the plaintiff or by adjacent landowners. The records of the council do not show what proceedings were had in all cases, and it may not be too much to say that no express authority to construct any portion of the sewers appears. It is apparent, however, that private cesspools had become noxious, and the inhabitants were desirous of relief through sewers, and the plaintiff laid a 12-inch sewer from the lake across private grounds, and extended it, with the assent of the council, for a short distance in the street, and he was suffered to make further extensions, from time to time, as petitions were filed with the council. Among other places that were connected with the sewer through such extensions, were the courthouse and the public schools. The plaintiff sold rights to adjacent landowners to connect their premises with the sewer at the price of $100 per lot, and, when the lower end of the sewer became inadequate by reason of increased patronage, he laid a second 12-inch sewer, to increase its capacity. In all he laid about four miles of sewer. It is claimed that the sewer always worked satisfactorily, though the defendant asserts that, by reason of the fall in the level of the lake, its discharge is not under water, and that it is therefore a nuisance. On the other hand, there is evidence tending to show that a sewer whose mouth is below the surface of the water would become clogged, and that it is proper to discharge above the surface.

After a period of about four years from the construction of the first portion of the sewer, and in February, 1888, a petition for leave to build a sewer, to be connected with plaintiff's sewer, was filed by one Baker, which ap-

pears not to have been acted upon before October 5, 1888, at which time the plaintiff sent a communication to the council, stating that he had been informed that Baker's petition was to be denied, unless a waiver should be filed of all rights of lot owners to oppose a tax on their lots for the purpose of constructing a sewer by the city to be connected with lots at a future time, and protesting against such action, but offering to pledge his sewer for the payment of such tax.    On February 3, 1890, one Delano filed with the council a petition setting up a copy of a contract with the plaintiff to connect his house with the sewer, and asking leave to make connections.    This was referred to the sewer committee, which reported in favor of granting the petition "upon· the condition that the work should be done under the city's supervision, and that the petitioner waive all his rights to the city."    This report was adopted.    In May, 1890, an ordinance was passed prohibiting connection with any private sewer in the city without first obtaining permission from the council.    It is claimed that the plaintiff was refused permission to make any more connections, and that when he attempted to do so he was arrested by the city authorities, and prevented; that he had previously offered to adjust the matter by a sale of his sewer to the city, and a committee of the council had examined the same, and reported to the council advising such purchase for the sum of $15,000, which report was acted upon, and a resolution passed to offer the plaintiff that sum, but the same was vetoed by the mayor.

At the close of plaintiff's testimony a motion was made that the court direct a verdict for the defendant upon the following grounds, viz. :

"*First*, because the plaintiff has shown no valid grant from the city to Mr. Stevens.

"*Second*, because the plaintiff has not shown that the defendant has in any manner whatever interfered with the operation of his sewer.

"*Third*, because it appears that the grants of the rights to connect with this sewer were granted to private individuals, and said grants and such grants as have been given to private individuals the terms cannot be extended beyond the written permit or the written grant that was given.

"*Fourth*, because the plaintiff has shown no damages that can be estimated or computed, or can be rendered the basis of a money judgment.

"*Fifth*, because the testimony of the plaintiff shows no cause of action."

The court granted the motion, but it does not clearly appear what view he took of the case, unless it be that, as the plaintiff had not shown that the city interfered with or destroyed any portion of the sewer, he had not proved his case.

The declaration is in two counts, both of which claim damages by reason of plaintiff's being prevented from profiting from his sewer, through selling and making connections, by the wrongful act of the defendant. We have little doubt that the plaintiff was permitted and encouraged to construct these sewers in the expectation that he would be allowed to use them in much the same manner that a gas company does its pipe, and that it was the intention of the parties that the plaintiff should construct the sewers in return for the privilege of selling rights therein to the inhabitants for a sufficient period to make his venture one of profit, rather than loss. But this privilege involves, and is inseparable from, the use of the land through which the sewer is laid. To create a valid right to such use it is necessary that the plaintiff have an interest in such land, amounting at least to an easement, which must rest in grant, and cannot be created by parol. Such a grant is within the power of the council, but, like a legislative grant, it must appear by its records, and cannot be otherwise made.

It is contended by counsel that the contract is valid, though there be no grant, and that the plaintiff may recover damages for the breach of the contract arising

out of the revocation of his license. The difficulty with this is that the contract was void, inasmuch as it involved the creation or transfer of an interest in land. All contracts of this kind, whether executed by the payment of the consideration or executory, are within the statute. The utmost effect of a parol contract of this kind is a license, and, as a rule, licenses, whether oral or written, are personal to the licensee, not subject to alienation, and may be revoked at will, when and so far as they affect title to land. In some jurisdictions a rule has obtained which makes such a license irrevocable where the licensee has made an expenditure in reliance upon the license. This is upon the ground of estoppel. Counsel cite cases from Illinois and Montana where this has been held against a city which had permitted railroads to be constructed upon its streets. In *Maxwell* v. *Bridge Co.*, 41 Mich. 467, Mr. Justice COOLEY cites such cases from Pennsylvania, Georgia, Indiana, Illinois, and Ohio, but does not commit the court to that doctrine. Again, in *Day* v. *Walden*, 46 Mich. 575, the same judge alludes to the rule, but again the question is not passed upon. We should expect to find this rule prevailing in those States where estoppels *in pais* are permitted to apply to land, but it seems inconsistent and irreconcilable with the rule that title to land cannot pass by estoppel,—a rule which is settled in Michigan. *Hayes* v. *Livingston*, 34 Mich. 384 (22 Am. Rep. 533); *Nims* v. *Sherman*, 43 Mich. 45; *White* v. *Hapeman*, 43 Mich. 267 (38 Am. Rep. 178); *Showers* v. *Robinson*, 43 Mich. 502; *Morrill* v. *Mackman*, 24 Mich. 283 (9 Am. Rep. 124); *First Nat. Bank* v. *McAllister*, 46 Mich. 397; *Shaw* v. *Chambers*, 48 Mich. 355; *De Mill* v. *Moffat*, 49 Mich. 125; *Penfold* v. *Warner*, 96 Mich. 179 (35 Am. St. Rep. 591); *Wood* v. *Railroad Co.*, 90 Mich. 339; *Huyck* v. *Bailey*, 100 Mich. 223; *Gugins* v. *Van Gorder*, 10 Mich. 523 (82 Am. Dec. 55). We are therefore constrained to hold that the sewer appears to have been constructed under an arrangement that made its use inseparable from an ease-

ment.  *Maybury* v. *Gaslight Co.*, 38 Mich. 155; *Attorney General* v. *Detroit Suburban R. Co.*, 96 Mich. 69.  The alleged contract was not such as conveyed an interest in the land, and therefore it amounted to no more than a license, which the council had the legal right to revoke.

Equitable remedies cannot be considered upon this record.

I think that the judgment should be affirmed.