## NOWLIN LUMBER CO. *v.* WILSON.

1. LICENSE—PRIVILEGE CONFERRED BY LETTER.

Permission granted by letter to a lumber company to build a logging road across the writer's land is a mere license, and not a lease, where exclusive possession is not purported to be given to any part of the premises, no rent is reserved, and no consideration paid or promised for the right conferred, which the letter calls a "privilege."

2. EASEMENT—HOW ACQUIRED.

In order to establish an easement, where there is no claim to a prescriptive right, a valid grant must be shown.

3. ESTOPPEL—LAND TITLES—STATUTE OF FRAUDS.

Title to land cannot, in view of the statute of frauds, be acquired through estoppel.

4. SAME—REVOCATION OF LICENSE.

A gratuitous license to a lumber company to construct a log-

ging road across the licensor's land does not become irrevocable by the company's expending money in reliance upon the expectation of a continuance of the license.

Appeal from Clare; Dodds, J.   Submitted January 24, 1899.   Decided March 2, 1899.

Bill by the Nowlin Lumber Company against Amelia B. Wilson to restrain interference with a logging railroad. From a decree dismissing the bill, complainant appeals. Affirmed.

*C. W. Perry*, for complainant.

*George J. Cummins* (*Roberts & Crane*, of counsel), for defendant.

HOOKER, J.   Complainant and the defendant own adjoining lots of timbered land, different parcels of the complainant's land being separated by the land of the defendant.   Previous to the time that the defendant acquired title to her property, the complainant desired to construct a logging railroad across the land now owned by the defendant, so that it might transport timber, which it proposed to cut upon one of its parcels, to its sawmill, which was located upon the other tract.   It therefore addressed the following letter to Mr. Spencer, who then owned the land now owned by the defendant:

"CLARENCE, MICH., Sept. 8, 1897.
"Mr. H. C. SPENCER,
        "Flint, Mich.
"*Dear Sir:*   I write you for permission to build a logging road across a 40 on your land,—the S. E. ¼ of the N. W. ¼ of 19, town 19, 5 west.   What timber we have to cut will be cut into logs of usual length, and left on side of road.   Trusting the above request will be agreeable to you, and that we may receive an early reply, we are,                Yours truly,
                "NOWLIN LUMBER COMPANY."

Mr. Spencer's answer to this letter was not produced upon the trial, but complainant's witness testified that "it

stated that those lands were for sale, and that he would not have a stick of timber cut, and forbade me to trespass it." The correspondence continued as follows:

"CLARENCE, MICH., Sept. 11, 1897.
"Mr. H. C. SPENCER,
          "Flint, Mich.
"*Dear Sir:* Yours of the 9th inst. received. In regard to logging railroad across your land, I think you have a wrong impression in regard to the timber that we would cut. We do not need a wide track. It is easier for us to shun large trees than to cut and grub the stumps. We have graded 1½ miles through standing timber, and I do not think we have had to cut to exceed 2,000 feet of standing trees. Inclosed please find plats of land owned by us. Examine same, and you will see that the favor we ask for is very beneficial, and might be asked for by either party. Trusting that you will give this matter a little careful consideration, and awaiting an early reply, we are,
                    "Yours truly,
          "NOWLIN LUMBER COMPANY."

"FLINT, MICH., Sept. 13, 1897.
"NOWLIN LUMBER CO.
"*Gentlemen:* I have referred the matter of crossing my land to John R. Brown, of Harrison. I received a letter from him a few days ago, in which he advised giving you the privilege you ask. If you should cut timber, I would expect you to pay the value of it.
                    "Yours,
                    "H. C. SPENCER."

"HARRISON, MICH., Sept. 15, 1897.
"NOWLIN LUMBER CO.
"*Dear Sir:* I wrote to Spencer, of Flint, about your crossing his lands, and he says it's all right, go ahead, and you may have time to take your lumber off. Mr. Spencer will expect the same privilege to cross your lands to cut his timber. Whatever timber you cut down on the right of way, cut it in logs, take them, and pay him for the timber. He sends me your letter.
                    "Yours,
                    "JOHN R. BROWN."

- The complainant began clearing a way for the road two or three days after the correspondence ended, and had

it partially built when it received a letter from the defendant, who acquired title by full warranty deed from Spencer on October 15, 1897.   The letter is as follows:

> "HARRISON, MICH., Oct. 16, 1897.
> "NOWLIN LUMBER CO.,
>        "Clarence, Mich.
>  "*Gentlemen:*  I have purchased all lands belonging to H. C. Spencer and W. H. Wilson & Son in Greenwood township.   I hereby notify you to stop operations on the same, also to stop crossing said lands with your railroad, and that, unless the same is immediately done, I shall be compelled to ask for an injunction to restrain you from doing so.   Awaiting your early reply that you will do so, and not compel me to resort to this method, I remain,
>                 "Yours truly,
>                        "MRS. A. B. WILSON."

This was followed by the commencement of this suit. The complainant appeals from a decree dismissing the bill of complaint.

The bill alleges that the complainant found it necessary in its business to construct and operate a logging railroad across these premises; that it thereupon conferred with Spencer; and that such conference "culminated in securing from him (Spencer), in writing, the right of way and privilege to go upon, cross, erect, build, construct, maintain, and operate such logging railroad upon the lands described;" that it expended large sums in doing this; that the defendant claims to have purchased the land from Spencer; that such purchase, if made, was with knowledge of its rights; that it was then in possession, occupancy, and control of the road; and that defendant has destroyed a portion of said road, and threatens to prevent the complainant from repairing, maintaining, or operating it.   The prayer was for an injunction, and included general relief.

It is contended in the brief of counsel that the proofs show that the complainant acquired an interest in the nature of a lease of the ground for the purpose of a road, to be used as long as necessary, or at least for a reasonable

time. It is claimed that it was in writing, signed by Spencer, and was for a valuable consideration. It is said, further, that, if it should be held to be a license merely, it is an executed license, and that complainant has expended large sums of money, and that it is therefore irrevocable.

The writing consists of the letters quoted, and, as the parties never met, the letters are not qualified in any way. Counsel cites no authority to sustain the claim that the complainant acquired a leasehold interest. No such claim is made in the bill, and the letters themselves do not indicate that a lease was designed. They do not purport to give exclusive possession of any part of the premises, which is essential to a lease. No rent is reserved, and no consideration was paid or promised for the alleged right, which the letters and bill call a "privilege." See *Druse* v. *Wheeler*, 22 Mich. 439; *East Jersey Iron Co.* v. *Wright*, 32 N. J. Eq. 252. We must therefore consider the question of license.

The defendant maintains that, at most, the letters show a gratuitous license, and that such is revocable at will, and that it was revoked by the deed from Spencer to her, and, at all events, by her letter of October 16th. Counsel for the complainant says that this is an executed license, and, therefore, that it is irrevocable. He also says that it is based upon a valuable consideration, and that complainant has been allowed to expend large sums of money upon the railroad, and that a revocation would be a fraud. It cannot be said that the complainant has an easement, because an easement must rest in prescription or grant. There is no claim to a prescriptive right, and these letters certainly constitute no grant—*First*, because they do not comply with the statute prescribing how interests in land shall be conveyed (2 How. Stat. § 5658); and, *second*, because they do not contain words indicative of a grant. For the latter reason, and the want of definiteness and of a consideration, as well as for want of proper pleading, there is no remedy in the nature of specific performance of a contract for an interest in land. In *Clark* v. *Glid-*

*den*, 60 Vt. 706, it is said: "It is clear that an interest in land cannot be conveyed by parol, nor can an easement be created except by deed;" and the same doctrine will be found in most of the cases hereinafter cited.

Therefore the complainant must stand or fall upon the proposition that the license is irrevocable, because it has been permitted to expend money in reliance upon the expectation of a continuance of the license. This claim is supported by cases cited in the brief of counsel. Before discussing them, however, we may say that this claim rests upon the doctrine of estoppel, and therefore it is to be expected that those courts which have adopted the rule that title to land may be acquired through estoppel will apply the doctrine in cases similar to this. But such is not the law in this State, as we have frequently had occasion to say. The legislature has emphatically said that title to land must rest upon something more tangible than oral agreements or understandings, and it should require something more than a hard case to justify the adoption of a rule which would seriously jeopardize land titles. In *Clark* v. *Glidden*, *supra*, it was held that when A. allowed B. to lay a pipe, and take water from a spring, it became an irrevocable license during the existence of the pipe. This was distinctly put upon the ground of estoppel. In *Ferguson* v. *Spencer*, 127 Ind. 66, the supreme court of Indiana, following several other Indiana cases, and *Clark* v. *Glidden*, *supra*, applied the same doctrine in a similar case, and stated the following proposition, viz.: "Where a license is coupled with an interest, or the licensee has done acts in pursuance of the license which create an equity in his favor, it cannot be revoked;" citing *East Jersey Iron Co.* v. *Wright*, 32 N. J. Eq. 248. But we understand that *East Jersey Iron Co.* v. *Wright* does not enunciate that doctrine. After stating that a license is revocable at pleasure even when money has been paid for it (page 253), and that the death of either party, or a conveyance of the land, will terminate it, the opinion in that case proceeds thus: "These rules do not,

however, apply when an interest is coupled with the
license, or an interest is created by an execution of the
license,"—as where one sells a chattel situated upon his
lands, and by express words authorizes the purchaser to
enter and remove it; or where he gives the right to cut a
tree, or to dig ore in his mine, and remove it, such license
becomes irrevocable after the tree is cut or the ore is dug,
and the licensee may enter and remove such tree or ore
without becoming a trespasser.   But he could not, after
revocation, continue to cut other trees or dig more ore.
Another Indiana case—*i. e.*, *Messick* v. *Railway Co.*,
128 Ind. 81—applies the same rule to a license under
which the railway built its road.   This is at variance with
our own cases of *Wood* v. *Railroad Co.*, 90 Mich. 334,
and *Minneapolis, etc., R. Co.* v. *Marble*, 112 Mich. 4.

Counsel lays great stress upon the case of *Stevens* v.
*City of Muskegon*, 111 Mich. 72; but in that case the
majority of the court were of the opinion that something
more than a license was created, and that it did not rest
in parol.   The subsequent case of *Minneapolis, etc., R.
Co.* v. *Marble* is at variance with counsel's interpreta-
tion of *Stevens* v. *City of Muskegon*.   A learned discus-
sion of these subjects will be found in *Morrill* v. *Mack-
man*, 24 Mich. 284 (9 Am. Rep. 124).

As our own cases settle this question, it is unnecessary
to discuss at length cases from other States.   There is a
want of harmony upon the subject; but it is confidently be-
lieved that the doctrine contended for exists only where the
courts have permitted the doctrine of estoppel to override
the statute of frauds.   The following cases will be found
interesting, and most, if not all, of them sustain the view
adhered to in this State:   *East Jersey Iron Co.* v.
*Wright*, 32 N. J. Eq. 248, 255; *Prince* v. *Case*, 10
Conn. 375 (27 Am. Dec. 675); *Foot* v. *Northampton
Co.*, 23 Conn. 214; *Johnson* v. *Skillman*, 29 Minn. 95
(43 Am. Rep. 192); *Minneapolis Mill Co.* v. *Railway
Co.*, 51 Minn. 304; *Minneapolis, etc., R. Co.* v. *Railway
Co.*, 58 Minn. 128; *Cook* v. *Stearns*, 11 Mass. 533;

*Ruggles* v. *Lesure,* 24 Pick. 187; *Stevens* v. *Stevens,* 11 Metc. (Mass.) 251 (45 Am. Dec. 203); *Hodgkins* v. *Farrington,* 150 Mass. 19 (5 L. R. A. 209, 15 Am. St. Rep. 168); *Blaisdell* v. *Railroad,* 51 N. H. 483; *Hazleton* v. *Putnam,* 3 Chand. 117; *Mumford* v. *Whitney,* 15 Wend. 380 (30 Am. Dec. 60); *Miller* v. *Railroad Co.,* 6 Hill, 61; *Cronkhite* v. *Cronkhite,* 94 N. Y. 323; *Eckerson* v. *Crippen,* 110 N. Y. 585 (1 L. R. A. 487). The last case, written by Mr. Justice Peckham, will show the present state of the law in New York; and the copious notes to the cases of *Ricker* v. *Kelly,* 10 Am. Dec. 38 (1 Greenl. 117), and *Rerick* v. *Kern,* 16 Am. Dec. 497 (14 Serg. & R. 267), contain numerous authorities not cited.

We have no alternative but to affirm the decree, with costs.

The other Justices concurred.