BELL *v.* REED.

1. DEEDS—BOUNDARIES—TENANTS IN COMMON.
   Where the owners of land along a lake divided it into sixteen lots which faced a reserved right of way running through the center of the tract to the lake and between the platted lots and the lake there was a piece of ground, and they sold two lots to two persons and two sixteenth undivided interests in the land fronting on the lake to be used as a private common with the owners of the lots, it must be deemed to have been the intention of the owners to grant the beneficial enjoyment of the lake frontage to each purchaser for customary purposes, and the erection of a boathouse by one of the grantees was proper, and the right to use the lake frontage for such purpose was not lost by the sale of a lot by a purchaser under a deed not including his portion of the lake frontage.

2. LICENSES—ORAL LICENSE—REVOCATION.
   Where the owner of land along a lake through his agent orally permits an abutting lot owner to erect a boathouse on the lake frontage an oral license is created which is binding until revoked by the licensor..

Error to Ottawa; Cross, J. Submitted October 19, 1917. (Docket No. 72.) Decided December 27, 1917.

Ejectment by William Otto Bell and others against Henry A. Reed and another. Judgment for defendants. Plaintiffs bring error. Affirmed.

*Lillie, Lillie & Lillie,* for appellants.

*Louis H. Osterhous,* for appellees.

Prior to July 1, 1914, plaintiffs were the owners as tenants in common of a tract of land lying between Barber street in the village of Spring Lake on the south and Spring Lake on the north in Ottawa county. This strip of land was approximately 440 feet north and south and approximately 150 feet east and west. Desiring to market it, plaintiffs prepared a sketch or plat, which, however, never was recorded. According to this plat, they divided the southerly 400 feet of said strip of ground into 16 lots. These lots faced a reserved right of way 20 feet wide running north and south through the center of the plat, and the lots were 50-foot frontage on said way by 75 feet deep. North of said platted lots and between them and the lake there was an irregular piece of ground, having a varying depth with a frontage upon the lake of approximately 200 feet. This plot of ground was neither numbered upon the plat nor staked out upon the ground. On said 1st day of July, 1914, the plaintiffs sold to the defendants by metes and bounds one of the 16 lots (lot 10), and in the same instrument conveyed to defendants—

"also an undivided one-sixteenth of a piece or parcel of land north of the south 400 feet of said first-described parcel, and extending to the waters of Spring Lake, to be used as a private common with the owners of the lots in the said first parcel."

Very shortly thereafter defendants, desiring to erect a boathouse at some point on the frontage, conferred with one Samuel Falls, who was the agent for plaintiffs

and who had negotiated the sale to defendants. Falls went upon the ground with defendants, and upon paper divided the lake frontage by 16, and found that each one of the 16 owners would be entitled to about 13 feet thereof. Defendants then, with the consent of Falls, selected a point upon the front for the erection of their boathouse just east of the roadway through the center of the piece, if extended, and thereafter erected a structure thereon 12 feet wide and 24 feet long, built partially upon the land, but principally over the water. Later defendants erected upon lot 10 a house, and still later, and on August 9, 1915, sold the house and lot 10 to one William Savidge, since deceased, for a consideration of $1,200. This deed contained no reference to defendants' one-sixteenth interest in the unplatted portion of the land lying upon the lake front. Plaintiffs in the meantime and on August 3, 1914, had sold one other of the 16 lots to other parties, and had likewise conveyed to the grantees in that deed a one-sixteenth interest in the unplatted lake frontage.

A year after the sale to Savidge, and on August 4, 1916, plaintiffs filed a declaration in ejectment against defendants to which declaration defendants interposed a plea of the general issue. The case was heard by the court without a jury. Upon the trial evidence was introduced, over the objection of defendants, tending to show that plaintiffs, who still owned fourteen-sixteenths of said property, advertised the same for sale as lake frontage; that said lake frontage is commonly and beneficially used in that vicinity for the erection of boathouses or slips, and that it has no other use. Evidence was further introduced tending to show that the boathouse in question had been erected with the consent of plaintiffs' agent, who was marketing the property, and with the knowledge of one of the plaintiffs; that no objection had been raised to the

building of said boathouse or its occupation by the defendants until the declaration in ejectment was filed.

The learned circuit judge who heard the case, after reciting the facts, held:

"The boathouse is about 12 feet wide, which is less than one-sixteenth of the water frontage. Defendants have in no manner denied the plaintiffs the right to use the balance of the water frontage not inclosed by the boathouse of defendants. Spring Lake is a summer resort with numerous cottages, boathouses, etc., along its shores. Defendants conveyed lot 10 to William Savidge, but did not convey any of the water frontage. The deed given by the plaintiffs contains no restrictions as to the erection of boathouses on the shores of the lake. It is presumed that the shores would be used for such purposes as are appropriate in such a locality. The erection of a boathouse or slip would be necessary for the proper enjoyment of the land in question. The deed contains no restrictions that defendants cannot sell lot 10 and retain title to the shores of the lake. Plaintiffs have failed to make out a cause of action. It is therefore ordered that judgment be entered against the plaintiffs and in favor of the defendants with the costs to be taxed."

The case is now in this court for review.

BROOKE, J. (*after stating the facts*). The first 17 assignments are predicated upon alleged errors in the admission or exclusion of testimony. In our view of the case these assignments require no discussion.

The 18th assignment is based upon the findings of fact and of law by the court below. We are well satisfied that the defendants took by their conveyance from the plaintiffs title in fee simple to an undivided one-sixteenth interest in the water frontage. We are equally well satisfied that defendants could make a conveyance of lot 10 and retain title to said one-sixteenth interest. The purchaser from defendants of lot 10 acquired no interest in the lake frontage, and the deed from plaintiffs to defendants contains no limi-

tations upon the right of defendants to convey the lot without likewise conveying the undivided one-sixteenth interest in the lake frontage. It is difficult to understand exactly what is meant by the language used in reference to the undivided one-sixteenth, "to be used as a private common with the other owners of the lots of said first parcel." We have been unable to find any legal definition of the words, "private common," and the diligence of counsel has failed to aid us in this respect. In the light of all the circumstances surrounding this case, the acts of the owners of the parcel in so dividing it as to give each lot owner a building site away from the lake, a right of way to the lake, and an undivided one-sixteenth interest in the lake frontage, it would seem to have been the intention of the owners to give to each lot purchaser an equal right to beneficially use the frontage for such purposes as lake frontage in that vicinity is ordinarily used. If the erection of small boathouses upon the frontage by the owners of the lots is a beneficial use of the property consistent with the character of the surroundings, it would seem that the erection of such a boathouse by the defendants would not be in contravention of the terms of the grant.

But it is contended on behalf of plaintiffs that defendants are, at most, tenants in common of said lake frontage, and as such tenants in common they have no right to appropriate any aliquot part thereof to their own use and to exclude therefrom their co-tenants. As an abstract legal proposition, this position is undoubtedly sound, but we do not think it controlling in the case under consideration. It appears undisputed in the record that the value of each of the 16 lots was less than the value of the undivided one-sixteenth of the lake frontage. It further appears undisputed that, while the plaintiffs were the owners of fifteen-sixteenths of the undivided parcel, they, through their

agent, consented to the erection of a boathouse where it now stands by the defendants. Based upon this fact, defendants contend that the parties then in interest orally agreed to a partition of the lands held by them in common, and that, at least to the extent of the lands covered by the boathouse, the agreement for partition having been executed by the building of the boathouse, plaintiffs cannot now question defendants' title thereto. Upon this point defendants cite us to section 464, Gates' Michigan Real Property, where it is said:

"Moreover, in several instances a parol partition followed by either long possession or by valuable improvements has been held to be conclusive upon the parties"—citing *Joyce* v. *Williams,* 26 Mich. 332, and *Cronin* v. *Gore,* 38 Mich. 381.

An examination of these cases will demonstrate that upon the facts they are readily distinguishable from the case at bar, but if the acts of the parties in interest at the time the defendants' boathouse was erected, where it now stands, do not amount to an oral agreement to partition the lands held in common, now performed by the defendants, they still constitute a sufficient license from one cotenant to his fellow cotenant to warrant the erection of the structure. The record shows no revocation of said license, and until it is revoked we are of opinion that defendant may justly maintain his boathouse where it stands. See volume 25, Cyc. p. 647, where it is said:

"According to the better opinion, however, where nothing more than a mere oral license appears, it is revocable at the will of the licensor, whatever expenditures the licensee may have made, provided the licensee has reasonable notice and opportunity to remove his fixtures and improvements. To hold otherwise would be to override the statute of frauds and convert an executed license into an estate in land, which is going a greater length than equity ever went under the doctrine of part performance."

Cases from many jurisdictions are cited in support of the above, including *Hitchens* v. *Shaller*, 32 Mich. 496, and *Nowlin Lumber Co.* v. *Wilson*, 119 Mich. 406 (78 N. W. 338). There is no doubt that, in the absence of said license, the exclusive occupation by the defendants of any, even the smallest portion, of the property held in common, would operate as to the cotenants of defendants as an ouster and would justify the bringing of ejectment. In this view of the case, defendants, upon proper notice, would be obliged to vacate the lands now covered by their boathouse, and neither they nor any of their cotenants could erect anything upon the water front, and thus the very purpose of the conveyance of the undivided interest there would, it seems to us, be defeated. That, however, would be the position of the parties according to their strict legal rights. As the matter stands upon this record, we think the conclusion of the trial court that plaintiff had failed to make out a case for relief was proper.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.