CHARLES WOOD v. THE MICHIGAN AIR LINE RAILROAD COMPANY AND THE GRAND TRUNK RAIL-ROAD COMPANY.

[See 81 Mich. 358; 90 Id. 212.]

*Railroad companies—Right of way—License—Estoppel.*

1. A parol license to a railroad company to enter upon land and construct its road is revocable at the will of the owner.

2. An agreement for the conveyance of a right of way through the vendor's land on the route lately surveyed by the railroad company is construed to mean the land required for a right of way on the line or route *then* surveyed through the land, and which had been staked out when the agreement was made, the words " or to be surveyed," which appeared in the blank upon which the agreement was written immediately after the words "on the route lately surveyed," having been erased.

3. The term " route " is not necessarily so precise as to preclude variation sufficient to change an oblique angle into a curve; and a jury might well find, in a suit involving the construction of such an agreement, that the parties intended that such a variation might be made.

Error to Jackson. (Loveridge, J., presiding.) Argued January 20, 1892. Decided February 19, 1892.

Ejectment. Defendants bring error. Affirmed. The facts are stated in the opinion.

*E. W. Meddaugh* (*Thomas A. Wilson*, of counsel), for appellants.

*Dwight D. Root*, for plaintiff.

MONTGOMERY, J. This is ejectment, brought to recover possession of a strip of land extending across plaintiff's farm, and comprising the right of way of defendants. The title to the farm is conceded to be in the plaintiff, and the principal questions involved are:

1. Whether the executory contract hereafter referred to operated as a license to the defendants to construct the road on the line finally adopted.

2. Whether, if it did not have this effect, the plaintiff has by his conduct estopped himself from maintaining ejectment.

1. The agreement in question reads as follows:

"For a valuable consideration, to us in hand paid, and in order to induce the Michigan Air-Line Railway Co. to construct a railroad from Pontiac to the city of Jackson, in the State of Michigan, I promise to convey to the above-named company, or its assigns, on demand, free of all incumbrances and liens, for the right of way of said railroad through my lands in section 23 in the township of Blackman, on the route lately surveyed by said company, and the company to fence the same, such right of way not to exceed sixty-six feet in width, provided said road shall be constructed within three years from this date; the company to build a cattle-pass under the track, and to have a signal station, with side track. If no building is put up, the company to maintain a platform; said platform to be at the road crossing near my place.

"Witness my hand and seal, this 24th day of July, A. D. 1882."

The contract is signed, sealed, and witnessed. In the blank upon which the original contract was written, fol-

lowing the words, "on the route lately surveyed," the words "or to be surveyed" appeared in parentheses, and were erased.

At the time this agreement was signed, a line had been surveyed across the plaintiff's premises, and stakes were set. This line was nearly direct across the plaintiff's premises, having a slight angle at one point. The line actually occupied commences on the easterly side of plaintiff's land at a point some 15 rods north of the original line, extends westerly, crossing the original line, and leaves the plaintiff's premises about 5 rods south of the original line. It is claimed that this variation is material, as the present location occupies higher ground, and requires a deeper cut. The defendants' contention is that the phrase in the contract, "on the route lately surveyed," does not mean the precise line which had been surveyed, but that the parties must have understood that this survey was preliminary only, and that any line following the general course or route marked out on defendants' survey was permissible.

We cannot assent to this view. The fact that the words in the contract referring to a future survey were struck out is important. In addition to this, the fact appears that the line across plaintiff's land was staked out at the time of the making of this contract. We think it clear that the land intended was such as is required for a right of way through his land on the line or route surveyed through his land.

The circuit judge charged the jury that,—

"In order to comply with the intent of the written agreement, it was not necessary that the road should have been built upon the identical line indicated by the survey existing at the time the agreement was made. It would be a sufficient compliance with the intent of the contract if you conclude that the road was built substantially in conformity to said survey."

This instruction was sufficiently favorable to the defendants. The term "route" is not necessarily so precise as to preclude variation sufficient to change an oblique angle into a curve, and the jury might well have found that the parties intended that this might be done; but this is a very different thing from saying, as we are asked to say, as matter of law, that it was the duty of plaintiff to inform himself, by an investigation of the general route of the defendants, whether some entirely different route across his premises might not prove more feasible. But, in view of the undisputed testimony in the case, the circuit judge might properly have instructed the jury that the road was not constructed on the line contemplated by the parties.

2. Has the plaintiff estopped himself from now claiming that this is not the true line? The defendants contend that he has, and base their claim on the testimony of the plaintiff. The plaintiff testified on direct examination that he had never given the company the right to construct the road on the line it now occupies, and that he protested against it all the time.

"I said it first to the surveyor that came on. Asked him the question if they were going to build the road where he was surveying. He said that that was the final survey. * * * I told him that I had never given the right of way, and they had no business there. He said they had a right to go where they had a mind to, whether a man was willing or not. I told him, 'I suppose so.' * * * I also protested to a man that came on there to do the work. He had charge of the men. His name was Deegan. They threw down the fences, and went on to plow up the ground."

On cross-examination he testified:

"Mr. Deegan was a subcontractor under Root & Brooks. I said to him that I had never given the right to build a road where they were going to build it. * * *

90 MICH.—22.

He referred me to Mr. Root, here in Jackson, as the man then authorized to get the right of way where it was not already procured; and I came immediately to see Mr. Root, and had a talk with him about it.   *   *   * I told Mr. Root the same as I told Mr. Deegan, and in reply. he said that, as soon as the weather came a little warmer, he would come to.my house, and we would look it over together, and he thought that we could agree on the damages to me.   *   *   *   *   *   *   *   *   *

" Q. You were satisfied with that talk with Root?

"A. I was; yes, sir.

" Q. And you went back and allowed the men to go on?

"A. I did; yes, sir."

This testimony shows that in the first instance the plaintiff protested against the building of the road on the line in question, and the most that can be claimed for the conversation with Root is that it amounted to a parol license to proceed and occupy the land, in the expectation that the question of compensation would be soon adjusted, and the damages to plaintiff paid. This was not done, however, and plaintiff subsequently demanded possession of the land, and, both this and compensation being denied him, brought this suit. The question here involved is not whether the defendants are liable for acts done under the parol license and before its revocation, as was the case in *Harlow v. Railroad Co.*, 41 Mich. 336, but whether the plaintiff is to be held, in an action at law, estopped from revoking this license.

In *Hayes v. Livingston*, 34 Mich. 384, 387, it was said:

" The statute of frauds is express that no interests in lands, with certain exceptions, which are unimportant here, shall be created or transferred otherwise than by deed; and although it is perfectly true, as is shown by Mr. Bigelow in his treatise on the Law of Estoppel (page 606), that, where one by his conduct is precluded in law from asserting his title in property, there is strictly no transmission of title, yet this is a mere tech-

nicality; the legal consequences are precisely the same, and for all practical purposes the estoppel works a conveyance. It would hardly be creditable to the administration of the law if the application of a statute so important as the statute of frauds should be turned away and defeated by a technicality so shadowy and unsubstantial." See, also, *Burns v. Martin,* 45 Mich. 22; *Cook v. Stearns,* 11 Mass. 533.

In the note to *Prince v. Case,* and *Rerick v. Kern,* in 2 Amer. Lead. Cas. 557, 558, it is said:

"An attempt to charge land with the burden of a way or other easement otherwise than by deed will consequently fail, from the insufficiency of the means employed, if the question arises at law, and is determined on strict legal principles. An additional safeguard was, moreover, given by the statute of frauds, under which no uncorporeal or incorporeal hereditament can be granted or assigned without a writing signed by the party to be charged. It follows that no easement or charge on land can be created by an oral license, even when the intent is plain, because the parties choose to rest satisfied with unwritten evidence, while the law requires a writing, signed and under seal. * * * Title is the right to possession and enjoyment, and an irrevocable authority to possess and enjoy is virtually a title. If I can use the land of another for a purpose of my own, under an authority which he cannot recall, the ownership relatively to that purpose is in me, and not in him. To give an oral license an effect which is denied to a contract is, therefore, virtually to abrogate the statute of frauds." Citing *Desloge v. Pearce,* 38 Mo. 588; *Houston v. Laffee,* 46 N. H. 505. "These principles are so plain as to be indisputable at law, and the only question is how far they should be modified by equity. A chancellor may control the words of the statute in order to prevent it from being used as a cover for the commission of the frauds which it was meant to suppress, but the power to do this belongs solely to equity, and cannot be exercised by a common-law tribunal, without confounding jurisdictions which have hitherto been kept separate."

See, also, *Winslow v. Cooper,* 104 Ill. 235. See, also, as sustaining the doctrine that a parol license to a rail-

road company to enter upon land and construct its road is revocable at the will of the owner, 1 Ror. R. R. p. 321; *Murdock v. Railroad Co.*, 73 N. Y. 579; *Irish v. Railway Co.*, 44 Iowa, 380. We think the plaintiff cannot be held estopped in this action at law.

Error is assigned upon the admission of certain testimony, but, as it necessarily follows from the views herein expressed that the plaintiff was entitled to recover as matter of law, it is unnecessary to discuss the further assignments.

The judgment will be affirmed, with costs.

Morse, C. J., McGrath and Long, JJ., concurred. Grant, J., did not sit.