MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY CO. *v.* MARBLE.

1. RAILROAD COMPANIES—RIGHT OF WAY—PAROL LICENSE.
   A parol license to a railroad company to enter upon land, and construct its road, is revocable at the will of the owner.

2. SAME—TITLE BY DEDICATION.
   A statutory dedication of land by the filing of a plat cannot vest title in a railroad company to land designated on the plat by its name, since such companies have no power to take land by dedication.

Appeal from Delta; Stone, J. Submitted January 9, 1897. Decided March 10, 1897.

Bill by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company against Webster L. Marble and others to enjoin the prosecution of a suit in ejectment. From a decree dismissing the bill on demurrer, complainant appeals. Affirmed.

*E. C. Chapin,* for complainant.

*Ball & Ball,* for defendants.

LONG, C. J. This bill was filed to restrain the defendants from prosecuting a certain ejectment suit against the complainant to recover the possession of certain lands used for railway purposes, situated in the city of Gladstone, this State, and also to adjudge and decree that the making, approval, and filing of the plat of the Marble addition to Gladstone (being a subdivision of lot 2, section 21, township 40 N., of range 22 W., Delta county, Mich.) was a dedication to the public and to complainant of the premises described for railway purposes, and that the plaintiffs in the ejectment suit are not entitled to possession thereof; and that the court decree and adjudge that the complainant, as the successor of the Minneapolis, Sault Ste. Marie & Atlantic Railway Company, acquired, and still has, equitable rights in and to the right of way over said premises, and that the defendants are estopped from ejecting complainant therefrom; and that the court adjudge and decree what damages, if any, shall be paid by the complainant to the defendants as compensation for the use of said right of way. There is also a general prayer for relief. An affidavit is attached to the bill, made by the chief engineer of complainant, which will be hereafter referred to. This bill was demurred to by the defendants, and the demurrer sustained in the court below.

It appears from the bill that the complainant is a corporation organized and existing under the laws of this State; that, in the year 1888, articles of consolidation of four railway corporations, namely, the Minneapolis, Sault Ste. Marie & Atlantic Railway Company, the Minneapolis & St. Croix Railway Company, the Minneapolis & Pacific Railway Company, and the Aberdeen, Bismarck & Northwestern Railway Company, were approved by the board of railway consolidations, and duly filed in the office of the secretary of state of this State, whereby the said four railway companies were consolidated, and be-

came a single railroad corporation, being the complainant in this case.   It also appears that in 1887, and before this consolidation, the Minneapolis, Sault Ste. Marie & Atlantic Railway Company was engaged in the construction of its railway through Delta county, and during that year entered upon and let its contracts over the lands described in the bill, such contracts being upon the lines shown on its profile, connecting with its docks; that it thereafter used said railway and tracks continuously for general railway business until on or about the 13th of June, 1888, when the same passed into the possession and under the control of the complainant, by virtue of such consolidation; that at the time of the entry upon said lands by the Minneapolis, Sault Ste. Marie & Atlantic Railway Company, and when constructing said railway, a corporation known as the N. Ludington Company, organized and existing under the laws of Wisconsin, and doing business in Wisconsin and Michigan, claimed to be the owner of said premises; that one Isaac Stephenson, of Marinette, Wis., was president of that company, and, it is alleged, had general management and supervision of its affairs in this State, and made agreements to sell and convey land and interests in the land of said company; that, as president, he granted license to use for right of way certain real property of said company in this State; that he agreed with said Minneapolis, Sault Ste. Marie & Atlantic Railway that the N. Ludington Company would convey to said railway company, for right of way and station grounds, a strip 200 feet wide over and upon the N. E. ¼ of the S. W. ¼ of section 12, town 39 N., of range 23 W., in Delta county, and made and dictated all the terms upon which said conveyance should be made, and that the said agreement was subsequently carried out by the N. Ludington Company, and said right of way was duly conveyed by deed.

It is further alleged that about the date of the entry of said Minneapolis, Sault Ste. Marie & Atlantic Railway on said lot 2, and the commencement of the con-

struction of said railway, the attorney and right-of-way agent of said railway company, one E. C. Chapin, had an interview with said Isaac Stephenson, and attempted to purchase the right of way now occupied and used by the complainant on said lot 2, and through other lands in Michigan of which said N. Ludington Company then claimed to be the owner, and that he asked the said Isaac Stephenson to name a price for which said right of way in Michigan could be purchased, and that said Stephenson declined to name a price, but said, in substance, to Chapin, "You go on and build your railway, and we will arrange the price some other time;" that, relying upon said consent for the occupation and use of said lot 2, the said Minneapolis, Sault Ste. Marie & Atlantic Railway Company proceeded with the construction of its railway upon and across said lot, and expended in said construction, for grading, ties, iron, and labor, about $7,000; that, during the years 1887, 1888, and 1889, said Chapin had several further interviews with said Stephenson, but was never able to secure any definite proposition from him as to the amount for which the N. Ludington Company would convey to the railway company the right of way; that in March, 1889, said Chapin again attempted, in a meeting with said Stephenson, to purchase said right of way, but was unsuccessful; that during the said years the Minneapolis, Sault Ste. Marie & Atlantic Railway Company was at all times ready and willing to pay, and would have paid, the said N. Ludington Company a reasonable compensation for said right of way, but could never secure a price for which the same could be purchased; that May 20, 1889, the N. Ludington Company conveyed all its interests in said lot 2 to the Isaac Stephenson Company, a corporation, and on May 21, 1889, the Isaac Stephenson Company conveyed its interests, by warranty deed, to Webster L. Marble, Peter Mathews, Carlton E. Rathfon, and Samuel B. Rathfon; that on the 15th day of June, 1889, Webster L. Marble, Rosa M. Marble (his wife), Carlton E. Rathfon, Samuel

B. Rathfon and Allie B. Rathfon (his wife), Peter Mathews and Sarah Mathews (his wife), made and executed a plat of said lot 2, which was approved by the auditor general of the State of Michigan, and filed in the office of the register of deeds of Delta county on July 15, 1889; and that from and including the year 1891, and to the present time, the land on said section 2 has been assessed by lots and blocks; and that the land occupied by the complainant has not been assessed, and no taxes paid thereon. The bill then sets out the commencement of the ejectment suit, and that the same is still pending.

It is further alleged, as a reason why condemnation proceedings have not been commenced, that it was expected that all right of way matters would be amicably settled and adjusted, and that, relying upon the negotiations with Stephenson, the railway company has expended large amounts of money in constructing its railway, and in maintaining and repairing the same; that the westerly track, shown on the plat annexed to the bill, is a part of the main line of complainant, which now extends from Sault Ste. Marie, Mich., to Portal, on the north line of the State of North Dakota, a distance of over 1,000 miles, and connects at each point with the Canadian Pacific Railway Company, and forms a part of a trunk line from the Atlantic to the Pacific Ocean. It is further claimed by the bill that the complainant has an extensive freight and passenger traffic, is engaged in carrying United States mail, and express for the Western Express Company, and employs a large number of men, and is a public highway; and that the removal of its tracks from said lot 2 would result in great and irreparable injury and loss to the traveling public, to all persons living along the line of its railway, and to the complainant; and that, by the acquiescence of the defendants in its operation and maintenance since the year 1887, the complainant has acquired equitable rights in said right of way, and that defendants should be estopped from ejecting complainant therefrom.

It is further claimed by the bill that the making and filing of the plat of said entire lot 2, with the right of way of complainant platted thereon, and designated on said plat as "M., St. P. & S. Ste. M. Ry.," meaning the complainant, and without reserving from the operation of said plat and dedication any part of said lot 2, is, in law and in fact, a dedication to the public and to the complainant of said right of way for the use and occupation of complainant for railway purposes; and that complainant is now and has been entitled ever since the making, approval, and filing of said plat to the use and occupation of said right of way, and cannot be lawfully ejected therefrom. The bill further sets out that, since the filing of said plat, said Webster L. Marble and Rosa M. Marble, his wife, on January 23, 1895, conveyed by quitclaim deed to Clayton Voorhis, one of the defendants, an undivided one-eighth interest in and to all lots and blocks of the Marble addition to Gladstone; and it is further alleged that other lots in said plat have been sold on contract; and it is therefore charged that said plat has been repeatedly recognized and ratified by the plaintiffs in the ejectment suit, and that they are now bound thereby; that, at the time the said railway company entered upon said lot 2, the entire lot was wild and uncultivated, and a part of the land covered by the railway, low, marshy, and at times covered with water; that, prior to the building of the railway, said lot and the adjacent lands were of little value, and, if there has been any advance in such value, it is in part, if not wholly, due to the location, construction, and subsequent operation of said railway.

It is shown by the affidavit attached to the bill that the easterly track of the complainant on said lot 2 extends to the elevator, coal dock, and sheds of complainant, and is the only track over which the wheat and other produce is conveyed from said main line to said elevator, and the coal shipped westward and elsewhere from said coal dock and sheds; and that over 1,000,000 barrels of flour and over 3,000,000 bushels of grain were carried over its track to

the said elevator in the year 1895, and over 200,000 tons of coal were unloaded on said dock, and shipped westward and elsewhere, in 1895, in addition to a large amount of merchandise, salt, and lumber which passed over its said tracks the same year; and that said lot 2 has not been damaged by the building of said tracks, but is now, and has been, benefited by said railway. It is further stated in the affidavit, on information and belief, that Mr. Stephenson was authorized by the N. Ludington Company to make sales, and to rent and lease lands, and to grant licenses to railway companies to cross and occupy the lands of said company for railway purposes.

It is contended by counsel for defendants that there is no allegation in the bill that Mr. Stephenson had any authority to sell the lands of the N. Ludington Company, or to grant rights of way. We think there is sufficient allegation of that fact, and that question will not be further discussed.

It is next contended that a permanent interest in and by way of an easement cannot be acquired by parol license. That question was settled in this State in *Wood* v. *Railroad Co.*, 90 Mich. 334, and cases bearing on the question are there collected. It was held in that case that a parol license to a railroad company to enter upon land, and construct its road, is revocable at the will of the owner. It was held in *Maxwell* v. *Bridge Co.*, 41 Mich. 453, that such a license is revocable, and was revoked *ipso facto* when the licensor conveyed the premises. We think these rules are too well settled in this and other courts to need further discussion.

But counsel for complainant contends that, however this may be, when lot 2 was platted by the owners, and the plat approved by the auditor general, and duly filed and recorded, and the plat showing these lands set apart for railway purposes, it operated as a dedication to the public and to the complainant for railway purposes. Counsel for defendants contend that there is nothing in the designation on the plat of this strip of land to indicate that it

was intended for a public railroad; that there is no name of the company mentioned, and the designation on the plat merely indicates that the parties making it contemplated the construction of a railroad, or supposed that a railroad would be constructed on the strip of land so designated, and they gave it the name that appears on the plat; that it is the mere mention of an existing fact, if such was the fact at the time.   Again, it is contended that a dedication for public purposes can be made under the statute only for public grounds, streets, and alleys, and that, therefore, the plat did not convey any rights to the complainant. Defendants also make the broader contention that there can be no dedication to a private corporation.   Section 3323, 3 How. Stat., provides that a railroad corporation shall possess certain general powers that are enumerated in that section.   The only way in which it is empowered to take land is by voluntary grant and donation, or by condemnation.   The statute does not provide that a railroad company may take lands by dedication.

The questions here presented arose in the case of *Watson* v. *Railway Co.*, 46 Minn. 321.   It appeared in that case that a plat of the lands contained a strip across the plat, marked "Reserved for right of way, line of S. M. R. R." It was claimed upon the part of the railroad company that this showed an intent to dedicate the lands so marked for railroad purposes.   It was held, however, that the effect of this was not to dedicate the land to the railroad company by the statutory dedication, and that the railroad company could not take title by common-law dedication.   It was said by the court:

"It is argued that a railway company is a public or *quasi* public corporation; that its purposes and duties are public; that its use of land held and used by it for the purpose of its railroad is a public use, and that lands dedicated for that purpose are dedicated to the public for public use.   From the arguments used, it might be inferred that the title of such a company to the lands held by it is merely nominal,—held by an agent for its principal, no rights or interests of its own being involved.   Fortu-

nately for such corporations, and for the public also, this is not the view the courts take of the relation between the corporation and the property held by it. The lands acquired by the corporation for the purposes of its enterprise are, so far as the right of property is concerned, private property. If purchased, the corporation pays for them; if taken in the exercise of the right of eminent domain, it pays the compensation. It is true they are charged with a public duty, which the corporation, in consideration of the rights and powers conferred on it by the State, assumes to perform, and which the State can compel it to perform. * * * The corporation, for its own profit and advantage, accepts the franchises offered by the State, and assumes to perform the functions and duties required by the State, not with property furnished it by the State, but with its own property. The ownership of the property is private, though the use required to be made of it is public."

The same rules were laid down in *Louisville, etc., R. Co.* v. *Stephens*, 96 Ky. 401; *Todd* v. *Railroad Co.*, 19 Ohio St. 514; *Lake Erie, etc., R. Co.* v. *Whitham*, 155 Ill. 514 (46 Am. St. Rep. 355).

In *People* v. *Salem*, 20 Mich. 478 (4 Am. Rep. 400), this court, in speaking of railroads, said:

"They are not, when in private hands, the people's highways; but they are private property, whose owners make it their business to transport persons and merchandise in their own carriages, over their own land, for such pecuniary compensation as may be stipulated."

We think that the contention of counsel for defendants is correct that the making and filing of the plat did not operate as a dedication of these lands to the public or to the complainant for railroad purposes. It may be a matter of hardship to the railroad company, after all these years of occupancy, and after expending large sums of money in improvements, to be compelled to take condemnation proceedings; but we are unable to agree with its counsel that it acquired title by this parol arrangement, or that it can hold land by dedication.

We think the court below was correct in dismissing the bill. The decree will be affirmed, with costs.

The other Justices concurred.