```
126      81
s85NW  241
d132   472
j132   477
```

GREENWOOD *v.* SCHOOL DISTRICT NO. 4 OF NAPOLEON TOWNSHIP.

AGREEMENT TO CONVEY LAND—PART PERFORMANCE—REVOCABLE LICENSE.

\* In 1837 one Fitch agreed with his neighbors to give an acre of land for a school-house site as long as it was occupied for a school-house, pointed it out, and promised to deed it to those who were capable of holding it, whenever they wanted it. A school-house was erected the next spring. A few years after a school district was organized, took charge of the site and of the school-house, repaired it, by an agreement with the adjoining owners, in 1875, erected fences, and in this manner has occupied the land continuously. *Held,* that Fitch did not convey a mere naked license, revocable at his will or at the will of his grantees, and that the school district was entitled to the possession so long as the land was used for school purposes.

Appeal from Jackson; Peck, J.   Submitted January 29, 1901.   Decided February 27, 1901.

Bill by Mary J. Greenwood and others against school district No. 4 of Napoleon township and others to restrain the erection of a school-house. The defendants filed an answer in the nature of a cross-bill to quiet title and to

\* Head-note by GRANT, J.
126 MICH.—6.

enforce a land contract. From a decree dismissing both bill and cross-bill, complainants appeal. Affirmed.

Complainants are the owners of a parcel of land containing about 62 acres. Upon a piece of this land is erected the school-house belonging to defendant school district. A special meeting of the legal voters of the district was called to meet October 3, 1899, to consider the question of a school-house site; the designation of one, if one had not theretofore been lawfully designated; to vote a tax for the purchase or lease of a site; and to authorize the issue of bonds to pay for said site and the erection of a school building. At such meeting a committee was appointed to confer with complainants for the purchase of a half acre of land, including the old site, which was and had been for many years inclosed. Complainants refused to make any arrangements, and the district voted to proceed with the erection of a new school-house upon the old site. Thereupon the complainants filed this bill to restrain the erection of said building, upon the ground that they were the owners of the land, and that their grantor had given only a mere naked license to erect the school-house then standing, and that such license was revocable at any time. The defendants answered, setting up an agreement with one Fitch, the original patentee of these lands, to donate this site for a school-house, its acceptance, and its occupation for that purpose from 1838 to the present time. The answer was in the nature of a cross-bill, asking that the title of the district be quieted, and that the contract with Fitch be specifically enforced. It also claimed title by adverse possession. The case was heard upon pleadings and proofs in open court. The bill was dismissed, and the affirmative relief prayed for by the defendants was denied, and the cross-bill dismissed.

The facts found by the circuit court are that in the fall of 1837 the settlers in that locality met and discussed the question of providing for a school for educating their children. They went to Mr. Fitch to discuss the question

of a place for a school-house.   Mr. Fitch went with them
to the place where the school-house now stands, and said
to them:

"Right here I will give you an acre of land just as long
as you will occupy it for a school.   If you will build a
school-house here, you will have it just as long as
you will keep school in it.   It shall be yours.   I will give
you a deed of this land if you will put a school-house
on it."

The witness who testified to the above also testified that
Mr. Fitch "said he would deed it to those who were
capable of holding the deed, whenever they wanted it."
A school-house was erected upon the site the next spring.
A few years after, a school district was organized, took
charge of the site and of the school-house, and has re-
tained possession thereof ever since.   The school-house
has been repaired several times since, and has been
occupied as a school-house for a period of about 60 years.
In 1875, by an arrangement with the then owner of the
land, the school-house site was marked off, and a fence
built to mark the line between it and the adjoining prop-
erty.   This fence was rebuilt about 14 years ago.   Mr.
Greenwood, from whom complainants acquired their title
as heirs, bought the property in 1882.   About five years
ago Mr. Greenwood notified the school district that it
had no right to construct a new building upon the prem-
ises.   Mr. Greenwood was the first one to question the
right of the district to these premises for a school-house
site.   The court below reached the conclusion that, under
the arrangement with Mr. Fitch, the school district had
a right to the occupancy of these premises so long as they
were used for school purposes.

*Richard Price*, for complainants.

*Parkinson & Campbell*, for defendants.

GRANT, J. (*after stating the facts*).   The position
of complainants appears to have been a shifting one.

Their bill was drawn upon the theory that those who made the arrangement with Mr. Fitch, and the school district, obtained a mere naked license, revocable at the will of Mr. Fitch or his grantees. Their main argument in the court below, judging from the written opinion of the court, was that the license lasted only so long as the original school-house remained. In their brief they now argue only three propositions: (1) That the defendant district has no title such as is required by section 4673, 2 Comp. Laws 1897; (2) specific performance; and (3) adverse possession. The last two points are not before us for adjudication, for they were decided against the defendants, who have not appealed.

There are two complete answers to their first contention: *First.* Complainants' bill is not filed by them, as taxpayers, to restrain an action of the school board as *ultra vires*, under section 4673, 2 Comp. Laws 1897, which reads as follows:

"No district in any case shall build a stone or brick school-house upon any site without having first obtained a title in fee to the same, or a lease for ninety-nine years; nor shall any district build a frame school-house on any site for which they have not a title in fee or a lease for fifty years, without securing the privilege of removing the said school-house," etc.

*Second.* If the defendants obtained from Mr. Fitch the right to the use and possession of this land so long as it was used for school purposes, then they have such a title as the statute requires. *Delhi School District* v. *Everett*, 52 Mich. 314 (17 N. W. 926).

The right of the parties must therefore be determined by the character of the agreement with Mr. Fitch. The language used by Mr. Fitch, the immediate action taken thereon, the erection of the school-house the next spring, the organization of the school district out of the territory including the land of Mr. Fitch, the possession taken by the school district, its occupation for more than half a century, the frequent acts of repairing the school-house,

and the construction and rebuilding of fences, clearly indicate that none of the parties understood, the one that he granted, and the others that they received, a mere naked license, revocable at the will of the licensor. If it is a license, the decree is erroneous. *Wood* v. *Railroad Co.*, 90 Mich. 334 (51 N. W. 263); *Nowlin Lumber Co.* v. *Wilson*, 119 Mich. 406 (78 N. W. 338); *Minneapolis, etc., R. Co.* v. *Marble*, 112 Mich. 4 (70 N. W. 319). If it was an agreement to convey the land for school purposes upon the erection of a school-house, the full performance on the part of the contractees took it without the statute of frauds. *Delavan* v. *Wright*, 110 Mich. 143 (67 N. W. 1110); *Pike* v. *Pike*, 121 Mich. 170 (80 N. W. 5), and authorities there cited.

We think the proofs clearly establish the parol agreement, and the learned circuit judge virtually so held. The school district was in possession, and this was notice to all parties of its rights, and the title by which it held the land. The agreement made with Mr. Fitch was therefore binding upon all subsequent grantees, all of whom appear to have recognized the rights of the district until about 1895. The court may have given a wrong reason for a right conclusion, but the decree for that reason will not be reversed. We think that the school district was in possession under a valid contract to convey the land for school purposes. It was undoubtedly in contemplation of those early settlers that a school district should be organized, and that said district, when organized, should succeed to this agreement and take possession of the land. It was the customary thing for early settlers to do. Probably no one thought of the importance of securing a deed from Mr. Fitch. Land was not then valuable, and it is not at all strange that no steps were taken to secure the deed agreed upon.

Decree affirmed, with costs.

The other Justices concurred.