WILSON v. MUSKEGON, GRAND RAPIDS & INDIANA RAILROAD CO.[1]

1. TITLE TO LANDS—ESTOPPEL.
   Interests in land cannot rest on estoppel alone.

2. RAILROADS—LAND CONTRACTS—POSSESSION.
   A land contract by the terms of which the vendor agreed to convey a strip of land to a railroad company for a right of way when it should have definitely settled upon and located its line and determined upon the construction of the road, but giving no right of possession, even when construed in the light of the statute (2 Comp. Laws, § 6234), does not give the railroad company a right of possession that will constitute a defense to an action of ejectment, though the road has been constructed and possession maintained for a time. GRANT, J., dissenting.

Error to Muskegon; Russell, J. Submitted December 5, 1902. (Docket No. 154.) Decided March 23, 1903.

Ejectment by Lucie S. Wilson against the Muskegon, Grand Rapids & Indiana Railroad Company and the Grand Rapids & Indiana Railway Company. From a judgment for plaintiff, defendants bring error. Affirmed.

*T. J. O'Brien* and *James H. Campbell*, for appellants.

*William Carpenter*, for appellee.

---

[1] Rehearing denied May 29, 1903.

Hooker, C. J.   There are two questions raised by the briefs of counsel: (1) Whether the plaintiff proved a *prima facie* title to the premises in dispute; and (2) whether the statute under which the defendant's railroad was located justifies us in holding that it acquired a legal estate or right of possession under an executory contract for the sale of land.

Each party claims title from Dennis Smith, plaintiff by deed, and defendant under a writing which reads as follows:

"In consideration of the sum of one dollar to me in hand paid, and of other valuable considerations to me moving, I hereby agree to convey, free of any incumbrance, to the Muskegon, Grand Rapids & Indiana Railroad Company, its successors and assigns, a strip of land thirty (30) feet in width over and across the following described premises, to wit:   The northeast quarter of the northeast quarter of section thirty-one (31) in the township of Muskegon, county of Muskegon, State of Michigan. The said railroad being one to be constructed from a point on or near the lake shore in the city of Muskegon, Muskegon county, Michigan, to the city of Grand Rapids, in the same State.   And I further promise and agree to make such conveyance on request of said railroad company at any time when it shall have definitely settled upon and located its line between the points above named, and determined upon the construction of the road:   *Provided,* however, that such time shall be within one year from the date hereof.   This agreement for right of way shall not inure or be assigned or transferred to any other railroad company now entering the city of Muskegon with its railroad.

"In witness whereof, I have hereunto set my hand and seal this 25th day of February, 1886.

"Dennis Smith.

"In presence of
    "N. L. Keating,
    "Lizzie J. Cavanaugh.

"State of Michigan, ⎫ ss.
  County of Muskegon. ⎭

"On this 25th day of February, 1886, before me, a notary public in and for said county, personally came

Dennis Smith, who acknowledged that he executed the above instrument as his free act and deed.

> "L. N. KEATING,
> "Notary Public,
> "Muskegon Co., Mich."

Were this a contract between natural persons, it would be held to convey nothing. It would give an equitable interest, and it might be held to give (by implication) a license to survey and determine a line for the projected railroad. It would not be said to transmit a right of title or possession that would avail as a defense in an action of ejectment. Presumably this railroad company with which the contract was made was organized under the general law, and had all of the rights which the statute gives to any railroad. It was authorized to acquire a right of way, and to take voluntary grants and donations of real estate and other property. It is urged that this contract, made for the purposes of railroads, when construed in the light of the statute (2 Comp. Laws, § 6234), gives a right of possession in the railroad company making it, especially where the road has been constructed and possession maintained for a time by such company. We may eliminate the latter portion of the proposition, because if the contract did not, of itself, when considered in the light of the statute, confer this right, there would be nothing left for it to rest upon but an estoppel *in pais*, and it has been repeatedly held that interests in land cannot rest on estoppel alone. The statute of frauds forbids.

I am not satisfied that the legislature contemplated any such construction. It is true that railroad corporations acquired the right to take and hold property by virtue of the statute, but there is nothing to indicate that they were to acquire it in any other way than any other citizen could do, except it should become necessary to condemn it by virtue of the power of eminent domain. It was apparently not necessary to do this in the present case. The railroad company was able to acquire the land by contract of purchase, and did so. What was the contract? Nothing but a plain everyday land contract, which gave it a right to a

deed when it performed the contract on its part. No right of possession was given by the terms of the writing. It is only by inference that we can say that it gave a right to enter for the purpose of survey. It could acquire title to land by grant or lease, or it could acquire it by judicial procedure.

What remedies the defendant has in equity is not a question for our consideration. If there is a valid executory contract, presumably it can be specifically enforced. If there is none, and none can be secured, it may be that it will be necessary to resort to condemnation proceedings, as in the case of *Minneapolis, etc., R. Co.* v. *Marble,* 112 Mich. 12 (70 N. W. 319), where it was said:

"It may be a matter of hardship to the railroad company, after all these years of occupancy, and after expending large sums of money in improvements, to be compelled to take condemnation proceedings; but we are unable to agree with its counsel that it acquired title by this parol arrangement, or that it can hold land by dedication."

It occurs to the writer to say that it would take but a slight extension of the construction of this statute asked for in this case to make it applicable to the state of facts in that case, for it is as easy to say that this statute abrogates the rule that contracts for the sale of land must be in writing, as that a right of possession goes with a written contract that does not mention it, and, under existing rules, does not include it. *Harrett* v. *Kinney,* 44 Mich. 457 (7 N. W. 63); *Moran* v. *Moran,* 106 Mich. 13 (63 N. W. 989, 58 Am. St. Rep. 462). If adopted, such construction must be a matter of first impression, for no analogous case is cited. The case of *Greenwood* v. *School District,* 126 Mich. 81 (85 N. W. 241), was an injunction bill to restrain the erection of a schoolhouse, and it was dismissed because the district had been in possession under a contract which, though oral, was so far performed that it was inequitable to permit the complainant to repudiate it. It is not, in my opinion, an authority upon which the defendant's contention in this case can be safely sustained.

I think the judgment should be affirmed.

MOORE, CARPENTER, and MONTGOMERY, JJ., concurred with HOOKER, C. J.

GRANT, J. (*dissenting*). This is an action of ejectment. Both parties claim title from the same grantor, one Dennis Smith. Plaintiff claims by regular chain of title by deed from Mr. Smith. The defendant claims a right of way 30 feet wide across the land by written contract with Smith. The case was tried by the court without a jury, and written findings filed, and judgment entered for the plaintiff. The contract under which defendant claims its right of way was executed February 25, 1886, and reads as follows:

" In consideration of the sum of one dollar to me in hand paid, and of other valuable considerations to me moving, I hereby agree to convey, free of any incumbrance, to the Muskegon, Grand Rapids & Indiana Railroad Company, its successors and assigns, a strip of land thirty (30) feet in width over and across the following described premises, to wit: The northeast quarter of the northeast quarter of section thirty-one (31) in the township of Muskegon, county of Muskegon, State of Michigan. The said railroad being one to be constructed from a point on or near the lake shore in the city of Muskegon, Muskegon county, Michigan, to the city of Grand Rapids, in the same State. And I further promise and agree to make such conveyance on request of said railroad company at any time when it shall have definitely settled upon and located its line between the points above named, and determined upon the construction of the road: *Provided*, however, that such time shall be within one year from the date hereof. This agreement for right of way shall not inure or be assigned or transferred to any other railroad company now entering the city of Muskegon with its railroad."

This contract was recorded June 18, 1886. The railroad company therein named made a map of its line and route through the county of Muskegon, and located, according to said map, the line as running across the southerly part of said land. This map was, on July 13, 1886, filed in the office of the register of deeds. Before December 31, 1886, the company had entered upon the said land, and con-

structed its roadbed and railroad from the city of Grand
Rapids to the city of Muskegon, upon and across said land,
at the same time building fences on each side of its track.
It commenced running trains regularly from Grand Rap-
ids to Muskegon early in the month of December, 1886.
Said railroad has been maintained and operated continu-
ously from that time to the present by the company named
in said contract and its lessee, the defendant the Grand
Rapids & Indiana Railway Company, and they have been
in the exclusive and continuous possession thereof since.
There has been no change in its roadbed during all this
time. Smith was a resident of Muskegon, and resided
there until his death, in 1892, and his heirs have since
resided there.

Plaintiff concedes that, under the agreement, the de-
fendants are entitled to a right of way across the land.
Her counsel says it is a question only of location. She
claims that another location was agreed upon alongside
the present one. In fact, her counsel asserts that four
feet of the present right of way is a part of the right
of way as plaintiff claims it was established by agreement
between Mr. Smith and the officers of the company. The
record contains no evidence to sustain plaintiff's claim of
any such location, except the map filed July 13th. Her
counsel says:

"It [the Muskegon, Grand Rapids & Indiana Railroad
Company] has a right of way immediately adjoining the
premises in dispute, and occupied in part by it, to which
it is lawfully entitled, and which came to it through the
plaintiff's grantor."

And, again:

"The map itself was offered in evidence, but no other
testimony was given tending to show the exact location of
the proposed line of the railroad. It can be determined
from that map only by applying the rule on the scale on
which the map is drawn. That scale is so small that it is
impossible to come to a correct conclusion by the use of the
rule."

Her counsel further claims that the defendants have only an equitable title, which is no defense to an action of ejectment, and can be enforced only in a court of equity.

Counsel for the defendants contend that the present right of way was located under the agreement; that it was acquiesced in by Mr. Smith and his heirs for over 14 years, and that the defendant Grand Rapids & Indiana Railway Company has the legal possession thereof.

The location of the right of way under the contract was a floating one, to become fixed only when the conditions of the agreement were complied with. By its terms the defendant the Muskegon, Grand Rapids & Indiana Railroad Company was given the right to enter upon the land to make surveys and to select the right of way. It entered, selected it, and inclosed it by fences. All these things were done with the acquiescence of Mr. Smith, and the use and occupancy by the railroad company acquiesced in by him and his heirs since, till the commencement of this suit. If it be conceded that the right of way now in use is not on the exact line indicated upon the map, this is not a case where the exact line of the map must control. The parties located the line elsewhere, and its location and use were and have been since acquiesced in. This case is not within *Wood* v. *Railroad Company*, 90 Mich. 334 (51 N. W. 263), where the plaintiff contracted to convey to the railroad company a right of way through his lands "on the route lately surveyed by said company." The land in that case had been surveyed and staked out. It was held to be an important fact that the words in the contract, referring to a future survey, were stricken out. When the company selected an entirely different route, the plaintiff immediately protested, and moved seasonably to enforce his rights. In the present case there was no dispute, and the right of way was laid out substantially along the line indicated upon the map. The company was acting under the agreement in locating and constructing its roadbed, and Mr. Smith knew it. There is no evidence that he was injured, or that the company was not acting

in good faith. The location of the right of way, under
such circumstances, was a full compliance with the agree-
ment.

The court was in error in holding that the defendant
Muskegon, Grand Rapids & Indiana Railroad Company
is not entitled to the possession of its right of way. A
railroad corporation can obtain its right of way only in the
two methods provided by the statute: (1) By agreement
with the land owners; and, (2) that failing, by condemna-
tion proceedings. It cannot commence the latter without
exhausting the former. Only when terms cannot be made
with the owner can it proceed to condemn. When it has
obtained the right of way by agreement, it is, in the
absence of provisions to the contrary, entitled to the right
of possession as effectually as though it obtained that right
by condemnation proceedings. When condemned, the
right of possession becomes absolute upon payment of the
sum awarded for such right of way. The only prerequisite
to its title and to possession is to pay the compensation
awarded. When this is done the land is acquired, and,
under the statute, for public use. When the right of way
is obtained by agreement with the owner, and the agree-
ment is silent as to possession, the company is entitled to
possession upon fulfilling the terms of the agreement. No
deed was necessary to establish the legal rights of the
company. The agreement, compliance therewith, the
location and construction of its roadbed, and its use by the
company as required by law, establish the legal right of
possession in the company. Its possession is no other or
different in character than it would have been if Mr.
Smith had made the deed as agreed upon. So long as the
railroad company carries on its business as required by
law, so long it is entitled to possession, with or without a
deed.

"Where the statute   *   *   *   gives the right to agree
upon compensation, then the matter of damages may be
settled by oral agreement, and the title will vest by virtue
of the statute, the same as if the damages were ascertained

and deposited pursuant thereto. Or the owner may waive prepayment simply, and thereupon the title will vest, subject to the lien for just compensation to be afterwards adjusted and paid." 2 Lewis, Em. Dom. § 298.

"A release of damages has the same effect as the assessment and payment of damages under the statute." Id. § 294.

I think that the case of *Greenwood* v. *School District,* 126 Mich. 81 (85 N. W. 241), is conclusive of this case. There a parol agreement to give an acre of land for a schoolhouse site, not definitely located by the agreement, was held valid, after the school district authorities had selected the land, fenced it, built a schoolhouse, and occupied it for many years. What there rested in parol is here established by a written agreement. The selection, inclosing, and use of the land fully establish the defendant's right to possession, and, as long as it uses the land for the purposes of a right of way, that possession is legal. See, also, *Smith* v. *Hamilton,* 20 Mich. 433, 439 (4 Am. Rep. 398).

Judgment should be reversed, and judgment entered in this court for defendants for a strip of land 30 feet wide, the center line of which is the center line of the railroad track of the Muskegon, Grand Rapids & Indiana Railroad, as the same is constructed upon and across the lands described in the declaration. Defendants should recover the costs of both courts.