Argued March 22, reversed May 17, rehearing denied June 29, 1927.

HENRY DAVID ET AL. *v.* J. H. BROKAW ET AL.

(256 Pac. 186.)

Licenses—License may be Revoked at Will Unless Licensee Replying Thereon has Made Material and Permanent Improvements, Rendering Revocation Fraudulent.

1. Person who grants license may revoke it at his pleasure unless licensee relying thereon has made material and permanent improvements, such as would make revocation fraudulent.

Frauds, Statute of—Grant of Right to Draw Water from Spring is "Incorporeal Hereditament" Within Statute.

2. Grant of right to draw water from spring is within statute of frauds; right being "incorporeal hereditament."

1. Revocability of license to maintain a burden on land, after the licensee has incurred expense in creating the burden, see note in 49 L. R. A. 497. See, also, 17 R. C. L. 578.

**Licenses—Title Should not be Encumbered by Holding Licenses Irrevocable, Unless Contrary Holding Would Work Serious Fraud.**

3. Title to land should not be encumbered by holding license granted by land owner irrevocable, unless contrary holding would work serious fraud on licensee.

**Waters and Watercourses—Revocation of Right to Use Water from Spring Held not Fraudulent, Where Only Expenditures Made were for Plumbing.**

4. In suit to enjoin disconnecting of water-pipe leading . from spring on defendant's premises, revocation of right previously given neighbor to draw water therefrom did not constitute fraud, where neighbor's only expenditures were for pipes and plumbing fixtures, and where water supply was insufficient for both parties.

**Waters and Watercourses—Revocation of License to Use Water from Spring Held not Precluded by Advice to Abandon Well.**

5. Defendants *held* not precluded from revoking plaintiff's license to take water from spring on defendants' land because on defendants' advice plaintiff abandoned and filled well on latter's premises.

**Waters and Watercourses—No Right of Appropriation was Acquired by Permit of Water Board, in Spring Insufficient for Owner's Needs.**

6. Where water flowing from spring was insufficient to satisfy owner's needs, another land owner could acquire no right therein by permit from state water board.

**Waters and Watercourses—Land Owner Impounding Water from Spring on His Land is "Owner" of Water (Or. Laws, § 5797).**

7. Owner of land on which spring rises is "owner" of spring water, which he himself impounded, under Section 5797, Or. Laws.

**Waters and Watercourses — Right to Appropriate Water Through Pipe-line from Spring for Consideration Held Contract for Sale or Rental, not License.**

8. Agreement, by which owner of spring permitted neighbor to receive water therefrom from end of pipe-line for consideration, *held* contract for sale or rental, not license.

**Waters and Watercourses—Rights of Spring cannot be Adjudicated, in Absence of Suitable Pleading and Evidence.**

9. Rights in spring water as between owner of land and neighbor drawing water from spring cannot be adjudicated, in absence of suitable pleading and evidence.

**Waters and Watercourses—Tender of Agreed Rental for Right to Appropriate Spring Water was Required to be Made at Owner's Residence.**

10. Persons contracting for right to appropriate quantities of spring water at specified rate were required to take rental to owner's residence, in order to make tender thereof effective.

---

3. See 17 R. C. L. 580.

Waters and Watercourses — Owner of Spring Contracting With Neighbor for Rental of Water Held not Estopped to Disconnect Pipe-line.

11. Owner of land containing spring, who, had permitted neighbor to pipe water therefrom, *held* not estopped to revoke privilege granted, where only expenditures made in reliance thereon were for pipe-line and plumbing, there being no license but only contract for sale or rental of water.

Waters and Watercourses—Expenditure for Plumbing Held not to Render Contract for Rental of Spring Water Easement or Irrevocable License.

12. Contract for purchase or rental of spring water did not operate as easement or irrevocable license by fact that person allowed to appropriate water made expenditures in installation of pipe-line and plumbing.

Equity, 21 C. J., p. 174, n. 20.
Frauds, Statute of, 27 C. J., p. 193, n. 85.
Licenses, 37 C. J., p. 279, n. 76, p. 290, n. 37, p. 292, n. 57, p. 293, n. 62, p. 294, n. 68.
Waters, p. 741, n. 99, p. 760, n. 69, p. 762, n. 81.

From Washington: GEORGE R. BAGLEY, Judge.

Department 1.

This appeal is from a decree enjoining the defendants from disconnecting the water-pipe of the plaintiffs from a pipe belonging to the defendants and conducting water from a spring belonging to the defendants. The decree also establishes in plaintiffs a perpetual, permanent and irrevocable license, authority and easement to take water from said spring. The plaintiffs are the owners of a tract of land near the land belonging to the defendants upon which the spring is situate. Defendants, about 1911, improved a spring situate on their own premises by first excavating and placing a barrel in the spring so that it would accumulate sufficient water to afford defendants water for domestic purposes at their residence on the same tract of land. In 1912 defendants further improved their spring by constructing a cement reservoir to collect water flowing from said spring. Thereafter one Jurgens was permitted to

121 Or.—38

connect a pipe with defendants' pipe and use. the water on his premises in the immediate neighborhood. Later, about 1914, plaintiffs were permitted to connect a pipe which was laid in the county road, a distance of about 400 feet, to their residence. For the privilege of connecting the said pipe both Jurgens and plaintiffs paid to the defendants the sum of $10 a year until about 1916 when the price was increased to $15 per year, which the plaintiffs willingly paid. Thereafter the plaintiffs moved from the residence occupied by them in 1913 to land owned by them 1,150 feet from the county road at the point they first applied the use of water from said spring. Since that time the defendants purchased the premises occupied by the plaintiffs in 1914 and now reside on those premises and have used the pipe laid by the plaintiffs along said road in 1914. The plaintiffs, at the request of the defendants, put a "T" in the pipe where they first used the water. From that "T" they laid another pipe 1,150 feet to their present residence. The spring flows a small quantity of water. The quantity of water is so small that there is a real controversy between the plaintiffs and defendants regarding a channel worn by the water from the spring in its natural state. In the early days before the side of the hill from which the spring flows was denuded of its timber, the witnesses agree that the flow from the spring wore a well-defined channel. For a number of years prior to the time the spring was developed the land above and below the spring was under cultivation and there is a sharp controversy as to whether or not the spring flows a sufficient supply of water to wear a channel and whether or not the flow from the spring escapes from defendants' premises. Neither the plaintiffs nor the said Jurgens contributed anything toward the improvements of

the spring or in laying the pipe from the spring to the residence occupied by the defendants in 1911. The plaintiffs contend that by virtue of a verbal agreement with the defendants to connect with said pipe in the county road and the expenditures of money and labor in laying a pipe from the said connection to the then residence of the plaintiffs thence to their present residence plaintiffs acquired an irrevocable license to the use of the water from said spring. Thy also claim that the defendants are estopped by reason of the same expenditures from now disconnecting the pipe so laid by the plaintiffs from defendants' pipe leading from the spring. There was a serious shortage of water from said spring during the autumn of 1923. The shortage was so acute that defendants did not have sufficient water for their own needs during the prune drying season in September and October. At the time the oral agreement was entered into by the parties no time was fixed for the payment of the rental agreed upon but payment was made in advance about November 1, until 1922. Plaintiffs did not pay November 1, 1923, and a controversy arose between the parties over the use of the water from the spring. After several demands for the rent, which was not paid, defendants disconnected plaintiffs' pipe at the place where the "T" was inserted by plaintiffs at the request of defendants. That place was at the residence occupied by plaintiffs in 1914 and now occupied by defendants. In April, 1924, after defendants had disconnected the pipe as aforesaid, the plaintiffs and said Jurgens made application to appropriate .2 of a cubic foot per second from said spring and were granted a license so to do by the state engineer. The priority of the permit was April, 1924. Defendants contend that the agreement between de-

fendants and plaintiffs was a mere license revocable at the pleasure of the defendants. Defendants further contend though no specific agreement was made as to the payment of the rent, that the parties construed the agreement to be payment in advance and conducted themselves accordingly. They also contend that because plaintiffs failed to pay the rent in advance and after waiting a reasonable time they had the right to cease furnishing water from said spring to the plaintiffs.

REVERSED. REHEARING DENIED.

For appellants there was a brief over the name of *Mr. Lotus L. Langley*, with an oral argument by *Miss Manche I. Langley*.

For respondents there was a brief and oral argument by *Mr. E. B. Tongue*.

COSHOW, J.—1. The question presented for solution is, "have the plaintiffs an irrevocable license or easement in the water of the spring belonging to the defendants?" There is no controversy about an oral agreement having been entered into between the parties. There is some dispute between them as to the terms of the oral agreement. If the agreement amounted to a mere license, it is revocable by the licensor at his pleasure. However, if relying upon the license plaintiffs have made material and permanent improvements the license has become irrevocable, if its revocation would constitute a fraud upon plaintiffs. Some authorities are to the effect that if the parties cannot be placed in the same position in which they were when the license was given the license is irrevocable. The nature and effect of a license of the kind under consideration has been the source of much litigation. Numerous cases are re-

ported in this and ·other jurisdictions.   In a recent
case Mr. Chief Justice McBRIDE expressed the law
in this language:

" * * In this jurisdiction it is well established that
a license is irrevocable when the licensee in good faith
and upon reliance of his agreement, makes such valu-
able and permanent improvements that it would
amount to the perpetration of a fraud if the license
were revoked." *McCarthy* v. *Kiernan,* 118 Or. 55, 61
(245 Pac. 727).

The leading case in this jurisdiction upon the ques-
tion involved is *Heisley* v. *Eastman,* 102 Or. 137,
157 (201 Pac. 872).   In an exhaustive opinion by Mr.
Justice HARRIS, this court in page 157 of the official
report, after reviewing many of the authorities, sums
up its conclusion as follows:

" * * After an examination of our own prece-
dents and a consideration of the conclusions an-
nounced in them and after an analysis of the reasons
assigned for those conclusions, it is our view that
neither the direct payment of a consideration nor
the accrual of a benefit to the licensor nor participa-
tion by the lincensor is a *sine qua non,* although
these elements when present either singly or in com-
bination may strengthen the right of a licensee to
invoke the aid of a court of equity to prevent the
perpetration of a fraud upon him.   An oral and gra-
tuitous permission when acted upon by the expendi-
ture of a considerable sum of money in the construc-
tion of valuable improvements, which have been made
on the faith of such permission and would not have
been made in the absence of such permission and
would be either destroyed or materially lessened in
value by a revocation of such permission presents a
situation making the doctrine of equitable estoppel
peculiarly applicable, especially when the limits of
that doctrine are measured by the reasoning employed
in our own precedents upon the subject of oral li-
censes; and this conclusion is in harmony with the

views expressed by some other courts: *Rerick v. Kern,* 14 Serg. & R. (Pa.) 267 (16 Am. Dec. 497); *Stoner v. Zucker,* 148 Cal. 516 (83 Pac. 808, 113 Am. St. Rep. 301, 7 Ann. Cas. 706); 1 Williston on Contracts, 311; 17 R. C. L. 576, 579."

The determination of the instant case depends upon the conduct and expenditures of the plaintiffs in reliance upon the oral agreement. Plaintiffs contributed nothing to the improvement of the spring. All of their expenditures consists of laying the pipe from its connection with the pipe of defendants leading from the spring and in the plumbing in defendants' residence. These expenditures in no degree or way benefited defendants. They were all made by plaintiffs for their sole benefit and use. They all belong to the plaintiffs and could be removed at their pleasure. They are, therefore, not permanent and are of comparatively small value.

2. The right to draw water from the spring of the defendants is an incorporeal hereditament and an agreement granting that right is within the statute of frauds: *Raritan Water Power Co. v. Veghte,* 21 N. J. Eq. 463; *McCarthy v. Mutual Relief Assn. of Petaluma,* 81 Cal. 584 (22 Pac. 933); *Pifer v. Brown,* 43 W. Va. 412 (27 S. E. 399, 49 L. R. A. 497, and extensive note 8, notes in pages 502, 522–524). Another valuable case is *Lawrence v. Springer,* 49 N. J. Eq. 289 (24 Atl. 933, 31 Am. St. Rep. 702), and valuable note beginning in page 712; *Risien v. Brown,* 73 Tex. 135 (10 S. W. 661); *Dorris v. Sullivan,* 90 Cal. 279 (27 Pac. 216); *Curtis v. Noonan,* 10 Allen (Mass.), 406; *Legg v. Horn,* 45 Conn. 409, 415; *Van Horn v. Clark,* 56 N. J. Eq. 476 (40 Atl. 203); *Clark v. Glidden,* 60 Vt. 702 (15 Atl. 358). A valuable case is *Dillon v. Crook & Co.,* 11 Bush (Ky.), 321, where the legal principle involved herein is thus expressed:

"When an owner of an estate has by parol granted an easement therein, upon the faith of which the other party has expended money which will be lost and valueless if the right to enjoy such easement is revoked, equity will compel the owner to indemnify him on revoking the grant."

3, 4. But the authorities in this state have held that the expenditures made by the licensee in reliance upon the license must be in permanent improvements and of material value. The right to take water from the spring would be an encumbrance upon defendants' tract. Such a right might materially injure defendants. Before the court should thus permit the encumbrance of defendants' title it should be thoroughly convinced that not to do so would constitute a serious fraud upon plaintiffs. The expenditures made by plaintiffs in this case will not be lost by revocation of the license. The pipes laid by them and plumbing fixtures bought by them are not thereby destroyed nor taken from them. They received the value of their labor in the use of the water. It cannot be said that plaintiffs are defrauded by the revocation.

Much has been said in the argument regarding the great injury plaintiffs will suffer if not permitted to continue to draw water from said spring during the season for drying prunes. The evidence, however, of plaintiffs as well as defendants convinces us that the spring does not flow sufficient water to supply plaintiffs during prune drying season. It is a fact that both plaintiffs and defendants were compelled to haul water in order to have a sufficient supply during the prune drying season in 1923. There was not a sufficient water flow from the spring to answer the requirements of defendants much less for the necessities of both parties. We gather from the

evidence that the plaintiffs have been compelled to haul water during every prune drying season since they have lived where they now reside.

5. On the premises occupied by plaintiffs were two wells, neither of which supplied water during the entire season. The water in both wells was exhausted every summer. Plaintiffs claim that they filled one of said wells and abandoned it upon the advice of defendants. That advice was gratuitous. It was of no benefit to defendants whatever. Defendants were entirely indifferent as to what was done with the wells and what was said in that regard was a mere suggestion which plaintiffs were under no obligation to adopt and for which defendants cannot be held responsible. Plaintiffs were not induced to fill the well by defendants.

6. The permit granted by the State Water Board cannot aid plaintiffs. If there is a surplus of water flowing from the spring which plaintiffs may appropriate the permit will authorize the plaintiffs to appropriate .2 of a cubic foot of water per second. That permit, however, cannot grant to plaintiffs any interest in defendants' improvements or authorize them to appropriate for their own use any of defendants' property. If the spring flows water in excess of the amount used by defendants heretofore and such surplus water can be impounded by plaintiffs they may do so. But the State Water Board cannot take the private property of one person and transfer it to another. Defendants would not be allowed to waste the water nor to prevent the excess over defendants' needs from flowing in its natural channel from the premises so that the same may be captured and appropriated by the plaintiffs. The permit cannot be used to strengthen the license

claimed by the plaintiffs prior to April, 1902. It was not obtained in reliance upon said license, but, on the contrary, was obtained after said license had been revoked by defendants and is evidence that plaintiffs were not relying upon the license given them by defendants.

7, 8. We have discussed the issues involved as though the contract between the parties constitute a license because the case was presented on that theory in the Circuit Court as well as in this court. Our opinion is that the contract does not constitute a license. It is a contract for sale or rental of water. The spring rises on the land of the defendants and the water was impounded by the defendants without any contribution from the plaintiffs. The water flowing from the spring belongs to the defendants: Or. L., § 5797; *Morrison* v. *Officer,* 48 Or. 569 (87 Pac. 896); *Hildebrandt* v. *Montgomery,* 113 Or. 687, 690 (234 Pac. 267).

"A license in respect of real property is an authority or permission to do a particular act or series of acts upon the land of another without possessing any interest or estate in such land." 37 C. J. 279.

Plaintiffs had no authority to do any act on defendants' land. They received the water from the end of a pipe laid by the defendants from the spring to the county road near the then residence of the defendants. They took no part in appropriating the water from the spring but purchased or rented the water flowing through the pipe belonging to the defendants and conveying water from a spring belonging to the defendants. Defendants had been using the water thus appropriated by them for about three years before plaintiffs were permitted to attach their pipe to the aqueduct of the defendants.

9. The learned circuit judge correctly ruled that the water flowing from the spring could not be adjudicated in this case. There is neither suitable pleading nor sufficient evidence to adjudicate the water. There appears to have been no attempt to measure the flow from the spring.

10. We do not deem the matter of time of payment of any great importance. It is not claimed by plaintiffs that the license was revoked by defendants during the time when plaintiffs were entitled to the water by reason of rental paid. Plaintiffs rest their case upon an irrevocable license by operation of equitable estoppel. Plaintiffs never tendered payment of the rental until they filed their complaint in this suit. They never complained of the amount charged them but willingly paid the increase from $10 to $15 yearly. When the rent was demanded from them they did not refuse to pay nor did they claim that the rent was not due. They promised to pay. Plaintiffs claimed to have had the money ready for defendants but depended upon the defendants going some distance to Forest Grove to receive that rent. It was the duty of the plaintiffs to take the rent to defendants' residence in order to make a tender as plaintiffs claimed in their complaint.

11. By paying the annual rental for a number of years and by their conduct in promising to pay the rental for 1924, plaintiffs acknowledged the ownership of the spring and water therefrom to be defendants'. Plaintiffs were indebted to defendants in a small amount for some other services. Defendants offered to cancel their claim against plaintiffs for water rent and other services for the pipe which plaintiffs had laid. Defendants thereby acknowledged the ownership of the pipe laid by plaintiffs

to be the latters'. Our conclusion is that the expenditures relied upon by plaintiffs as constituting an equitable estoppel preventing defendants from revoking the license are not of such permanent nature or of sufficient value to constitute any license, much less an irrevocable license or easement. The expenses incurred by the plaintiffs in reliance upon that agreement were in no way different from such expenditures habitually made by persons purchasing water for household purposes from those who have it to sell. Plaintiffs did no more than to lay a pipe from the main belonging to defendants to plaintiffs' residence and to install such plumbing as plaintiffs' needs required in their own residence.

12. All of these expenditures were for personal property belonging to the plaintiffs, of no service whatever to the defendants, solely for the benefit of plaintiffs and do not constitute such expenditures as operate to change a contract for the rental or sale of water into an easement or irrevocable license. The testimony of defendants is undisputed that when defendants offered to accept the pipe laid by the plaintiffs and cancel defendants' indebtedness against plaintiffs the latter refused to accept said offer for the reason that plaintiffs would use the pipe to procure water from some other source. We believe the equities are with the defendants. The decree of the Circuit Court is reversed and one will be entered here dismissing plaintiffs' complaint.

REVERSED AND DECREE ENTERED. REHEARING DENIED.

BURNETT, C. J., and McBRIDE and RAND, JJ., concur.